**W. Howard CLAY, Executor, Appellant,**

**v.**

**Mercy EAGER et al., Appellee.**

Court of Appeals of Kentucky.

May 9, 1969.

Rehearing Denied Sept. 19, 1969.

W. Howard Clay, Louisville, for appellant.

Edward T. Ewen, Jr., Louisville, Charles Summers, Campbellsville, for appellee.

DAVIS, Commissioner.

This is an appeal by an executor of a will who was disallowed certain claims when he was forced into an accounting by a settlement suit. We find no error in the judgment and adopt in part the chancellor's opinion, which disposes of all but one of the questions raised on this appeal. We have added in parentheses our further comments.

"On February 13, 1957 Edwin C. Ranck died a resident of Louisville, Kentucky leaving a will which was probated in the County Clerk's Office of Jefferson County, Kentucky. On February 25, 1957 the defendant, W. Howard Clay, qualified as executor of the will and has been acting as same ever since that time.

"The will provided that the testator be buried at Lexington, Kentucky and stated that he gave $500 to maintain the burial plot. The testator then proceeded to devise to plaintiff, who was then Mercy Yeager and who is now Mercy Eager, the sum of $5,000.00. He bequeathed to Mary Phillips, described as 'our devoted family servant', the sum of $3,000.00. He bequeathed to his good friend J. Eldon Fillmore the sum of $1,500. Mr. Clay was designated as executor.

"Although Mr. Clay qualified in 1957 as executor and although all of the assets owing to the estate had come into his hands by the end of August, 1962, he made no effort to distribute to any of the beneficiaries named in the will any sums of money. He kept no separate account of the funds paid to him as executor and suit was brought in this Court to settle the estate, to require the defendants to present their positions and present any claims and to require Mr. Clay to distribute the estate. This suit was filed on August 9, 1965.

"The evidence which was taken before the Commissioner and an inventory and accounting filed by Mr. Clay reveals that the only asset of the estate was a note in the principal amount of $8,853.07 executed by Mr. and Mrs. J. B. Oliver and payable at the rate of $136.12 a month. The total amount paid under the terms of the note amounted to $10,442.95.

"Mr. Clay listed his expenses to be charged the estate as the following items:

A. Booker & Kinnaird—Bond Premium ... $ 495.00

B. Lee E. Cralle Funeral Home ... 387.50

C. General Hospital ... 97.00

D. Jewish Hospital ... 263.41

E. Ann's Rest Home ... 241.99

F. Note and interest due W. Howard Clay ... 1,400.00

G. Lexington Cemetery ... 500.00

H. Kentucky Inheritance Taxes ... 329.88

TOTAL .......... $3,714.78

"Mr. Clay also stated that his fee would be $522.97 as administrator plus any additional fees for his services as attorney and extraordinary services rendered.

"Subsequently on March 2, 1966 Mr. Clay tendered a settlement which differed only from the previous accounting in that it showed that he had paid to himself an executor's fee of $522.97 and an attorney's fee of $522.97 and also had paid Kentucky Inheritance Taxes amounting to $329.86 and had paid Lee E. Cralle Funeral Home $431.50 instead of $387.50. Exceptions were taken by the plaintiff to all of the credits claimed by Mr. Clay except for the amounts paid to Dr. Arman Cohen, the funeral home, and the two hospitals.

"The proof was taken before the Commissioner and the Commissioner approved Mr. Clay's settlement except for the sum of $103.13 which represented penalties incurred by reason of the untimely filing of the Kentucky Inheritance and Estate Tax return.

"Taking the tendered settlement of Mr. Clay of March 2, 1966, the first item objected to is the bond premium. It appears from such records that Mr. Clay has presented that the annual premium was $55. It seems to the Court that Mr. Clay should have distributed the estate at the latest by March, 1963. All of the assets of the estate had come into his hands by September of 1962. K.R.S. 395.190 provides that a personal representative may distribute the estate six months after qualification. Mr. Clay argues that he was unable to locate Mary Phillips. He also seems to have been in some doubt as to the whereabouts of Mercy Eager and as to her being the same person as Mercy Yeager who was the beneficiary under the will. These doubts as to Mrs. Eager's identity could have easily been resolved as Mr. Clay knew Mrs. Eager personally and knew that her permanent address was at the home of her mother in Paris, Kentucky. As far as Mary Phillips is concerned, the executor had six years to ascertain her whereabouts and to protect himself could pay the money into the hands of the Receiver for her account. The Commissioner erred in allowing Mr. Clay any credit for premiums paid to Booker & Kinnaird for the years 1964, 1965, 1966, and for that period of 1963 which extended from March 1 to the end of the year. Since Mr. Clay qualified on February 25, 1957 the bond premium apparently has as its anniversary date February 25. Mr. Clay should have been allowed credit on the bond premium for an amount roughly equivalent to $275.

\* \* \* \* \* \*

"The next objection is to Mr. Clay receiving a credit for $1,400 based on payment to himself of principal and interest on a note for $996 allegedly executed by the decedent to Mr. Clay on March 6, 1954 and a check made payable to Mr. Clay dated October 24, 1952 and allegedly executed by the decedent. The plaintiff objected to the filing of the note and the check on the basis that it had to be proved by competent testimony that it was the decedent's signature and also on the basis that proof would have to be shown for the reason of its execution. The Commissioner overruled the objection. The Commissioner should have sustained the objection under K.R.S. 421.210(2) and under the case of Combs vs. Combs, 380 S.W.2d 227 (Ky., 1964)."

(The instruments here involved are a check dated in 1952 and a promissory note dated in 1954. At least two different handwritings appear on these instruments. The check does not indicate what it was for. The note has no due date. Except for medical expenses, the decedent had no other debts. If these stale demands were presented to an executor by a third party, he certainly would be justified in requiring the claimant to explain the consideration for these obligations and why they had not long since been collected. He could also require proof of the authenticity of the signature appearing thereon. These instruments in the hands of the executor are further open to question because he had access to all of the decedent's papers. The burden was on the executor to prove these claims. First National Bank of Prestonsburg v. Sellards, 254 Ky. 550, 71 S.W.2d 1037. While admittedly the scope of his proof was limited under KRS 421.210 (2), the failure to substantiate these particular claims under these particular circumstances by any evidence other than an affidavit required by KRS 396.010(1) justifies disallowance of such claims.)

"Plaintiff objects to the allowance of any attorney's fee to Mr. Clay on the grounds that where an attorney also acts as administrator and executor he may receive only one fee for his services. The leading case which the Court has found on this subject is that of Slusher vs. Weller, 151 Ky. 203, 151 S.W. [684] 685. That case holds that where an attorney also acts as administrator he should recover only for his services as administrator. The Commissioner should have disallowed Mr. Clay's settlement insofar as it pertains to attorney's fees.

"This case differs from that of Morgan vs. Meacham, 279 Ky. 526 [130 S.W.2d 992] wherein the Court held that an executor who also acted as attorney might recover fees for his services in both capacities. The basis for that holding rested upon the fact that the testatrix had designated Mr. Breathitt as attorney and executor and therefore contemplated that he would be reimbursed for his services in both capacities. In the case at Bar Mr. Ranck named Mr. Clay only as executor. (And he rendered no special legal services.)

"Insofar as the objections to Mr. Clay's claim for his administrator's fees in the sum of $522.97 is concerned, the ruling statute is K.R.S. 395.150 and one of the leading cases in Greenway's Administrator vs. Greenway, 266 Ky. 114, 98 S.W.2d 283. The statute makes it clear that the Court may allow a maximum of 5% of the value of the personal estate of the decedent plus 5% of the income collected by the administrator or executor for the estate as commission to the representative. The statute in other words establishes a ceiling, not a base.

"In the Greenway case the rule was reaffirmed that when an administrator delays or neglects the settlement of an estate or the payment or distribution of funds in his hands when same become payable, or otherwise neglects his duty, the Courts may disallow any commission or compensation, or allow a less compensation than would or should have been allowed if the administrator had properly administered his duties. In the Greenway case the administrator was allowed a commission of 1%. In the instant case Mr. Clay did perform some services for the estate in that he made efforts to locate the beneficiaries under the will and also collected the sums owing to the estate by virtue of the note executed by Mr. and Mrs. Oliver. It is appropriate to point out that the note was secured by a real estate mortgage and that no unusual or extraordinary labors were imposed upon Mr. Clay in collecting the note, although he did testify that Mr. and Mrs. Oliver were several times on the verge of divorce and that he had to urge them to keep up the payments.

"In the case of Commonwealth for Use of Lynch vs. Campbell, 241 Ky. 349, 43 S.W.2d 994, Mrs. Lynch, who was the administratrix of her husband's estate, was

charged with interest because she failed to distribute funds in her hands from her husband's estate and treated it as her own but was allowed as an offset her claim for the reasonable value of her services.

"In the instant case it seems to the Court that it would be fair to allow Mr. Clay for his services rendered as executor a fee of 3%.

■ "Plaintiff contends that Mr. Clay should be charged with interest on $10,442.-95 from September, 1962 until the date of judgment. K.R.S. 395.310 states:

'A personal representative, after the expiration of two years from the time he qualifies, shall be charged with interest on the surplus assets in his hands from that period, and before the expiration of two years shall be charged with all interest realized on assets.'

■ "As pointed out in the Greenway case, supra, the general rule is that the administrator is charged with interest only after two years from the time he receives the funds but this rule is inapplicable to circumstances where the settlement was not due or other causes shown why the funds are not payable. In the case of Bemiss vs. Widows' [& Orphans'] Home, 191 Ky. 316, 230 S.W. 310, it was held that an administrator was liable for interest from the time he ought to have made settlement, although two years had not elapsed. In September, 1962 Mr. Clay had in his hands all of the assets of the estate of his decedent. Taking into consideration the fact that the estate as constituted at that time was probably not sufficient to pay all of the creditors' claims and all bequests in full and the further fact that Mary Phillips' whereabouts had not been ascertained, it still seems to the Court that Mr. Clay should have been able to settle the estate completely within six months after September, 1962. He should, therefore, be charged with interest at the rate of 6% per annum from March 1, 1963 until paid on the surplus assets of the estate. To determine what the surplus assets of the estate are we must subtract from the amount which Mr. Clay received all items for which he had properly been given credit as charges against the estate. These are the bills of the General and Jewish Hospitals, the bill of the funeral home, Kentucky Inheritance Tax, the bequest to the Lexington Memorial Cemetery of $500, the bill of Dr. Arman Cohen, and the 3% commission allowable to Mr. Clay of $313.29, as well as the $275 paid to Booker & Kinnaird. The proper computation of this amount reveals a figure of $7,948.52 upon which interest is computable.

■ "The Court costs of this action shall be charged to Mr. Clay in his individual capacity. See Hill vs. Roberts, supra, [Ky., 311 S.W.2d 569] at page 572." (This estate should have been settled without suit.)

■ The appellant also objects to the action of the chancellor in charging one of the beneficiaries a proportionate part of the attorney's fee allowed to the attorney who filed this suit. This was proper under KRS 412.070.

The judgment is affirmed.

All concur.