KENTUCKY BAR ASSOCIATION,
Complainant,

v.

Lawrence S. PROFUMO, Sr., Respondent.

No. 96–SC–584–KB.

Supreme Court of Kentucky.

Sept. 26, 1996.

Dale Wright, Kentucky Bar Association, Frankfort, for Complainant.

Peter L. Ostermiller, Haddad Law Office, Louisville, for Respondent.

### *OPINION AND ORDER*

In a disciplinary proceeding, the Board of Governors of the Kentucky Bar Association concluded that Respondent had committed six different offenses under the "old" Code of Professional Conduct.

On December 21, 1992, the Inquiry Tribunal charged Respondent, Lawrence S. Profumo, Sr., with three counts of collecting an

illegal or clearly excessive fee in violation of DR 2–106(A). Respondent also allegedly concealed or failed to disclose that which he was required by law to reveal and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 7–102(A)(3) and DR 1–102(A)(4), respectively. The final count accused Respondent of violating DR 5–101(A) by accepting employment in a manner that was affected, or reasonably might have been affected, by his own financial, business, property, or personal interests.

The Board found Respondent guilty of all six of those counts by a vote of 15–0. Ten governors recommended a one-year suspension from the practice of law, with one vote cast for a six-month suspension and four for a 30–day suspension. Respondent now requests that this Court issue only a private reprimand.

This matter arises out of the probate, administration, and settlement of the estate of Henrietta White Pirtle by the Respondent in the mid–1980s. While acting as executor and attorney for the estate, Respondent paid himself $5,000 for "pre-death" legal services rendered to Ms. Pirtle, $101,500 in executor's fees, and $27,000 in attorney's fees from estate funds. In addition, Respondent's real estate company received $22,750 for a 7% commission on the sale of Ms. Pirtle's home in Louisville, and $11,500 of that commission went directly to Respondent. None of the disbursements were made with disclosure to or approval from either the probate court or the sole beneficiary.

■ Respondent stands accused of three separate violations of DR 2–106(A), which provided that "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." The first concerns the executor's commission Respondent received. Compensation for executors is fixed by KRS 395.150(1) which states: "The compensation of an executor ... for services as such, shall not exceed five percent of the value of the personal estate of the decedent, plus five percent of the income collected by the executor ... for the estate." KRS 395.150 establishes a ceiling for an executor's commission, not a base. *See Clay v. Eager,* Ky., 444 S.W.2d 124, 127 (1969). The total

value of the personalty and income of Ms. Pirtle's estate totalled $464,517.65. The maximum to which Respondent should have been entitled, then, was $23,225.88.

Respondent, however, paid himself $101,-500 in executor's fees. In his defense, he notes that the statute does allow additional compensation if the executor has performed services that are "[u]nusual or extraordinary" or involve real estate or estate and inheritance taxes. KRS 395.150(2). Additional compensation is allowed only upon consent of the court and after submission of proof detailing the services rendered. *Id.* As a result, Respondent cannot rely on this exception since he neither asked the probate court to allow additional compensation nor presented evidence to the probate court justifying the fee.

Respondent next argues that DR 2–106 does not apply to fees received by a lawyer when acting in another capacity, such as executor of an estate. It only applies, so the argument goes, to *legal* fees; as a result, despite the clear violation, he maintains he cannot be disciplined by this Court as a result of the fee. If disciplinary action under DR 2–106 is taken for his conduct as executor, Respondent asserts, then an attorney could conceivably be disciplined for charging high nightly room rates while operating a bed-and-breakfast inn.

■ That argument, however, ignores the capacity in which Respondent acted as Ms. Pirtle's executor and the duties which accompany such an undertaking. As executor, Respondent is not an innkeeper; he is a *fiduciary.* A fiduciary relationship is "founded on trust or confidence reposed by one person in the integrity and fidelity of another ... in which a duty is created in one person to act primarily for another's benefit in matters connected with [the] undertaking." *Steelvest, Inc. v. Scansteel Serv. Ctr.,* Ky., 807 S.W.2d 476, 485 (1991). As the Board of Governors noted, Respondent demonstrates a fundamental lack of appreciation of what is demanded of a fiduciary, particularly in the context of the practice of law. According to Comment 3 of Rule 8.3 of our present Rules of Professional Conduct:

Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of attorney. *The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, agent and officer, director or manager of a corporation or other organization.*

SCR 3.130(8.3) cmt. 3 (emphasis added). Although the above comment comes from our current Rules and not the Code under which Respondent was charged, we share the view that any abuse of a fiduciary position can and should lead to disciplinary action by this Court when an attorney is involved.

This Court punished unprofessional conduct as a result of an attorney's actions as executor of an estate, albeit not with regard to excessive fees, in *Kentucky Bar Ass'n v. Harris*, Ky., 636 S.W.2d 646 (1982). We believe that when acting in a dual capacity such as executor/attorney, a member of the bar should not be allowed to claim that excessive fees received as a result of the work, while perhaps "non-legal" in some sense, are not subject to scrutiny by this Court. There is no reason to refrain from discipline under DR 2–106 where the hypertechnical interpretation advanced by Respondent would do violence to the purposes and provisions of the Code and the integrity of the fiduciary relationship.

Alternatively, Respondent argues that the executor's fee is reasonable in amount due to the complexity of the estate. While Respondent may have been entitled to additional compensation for his work on the estate, the contention that a fee over four times the statutory maximum is reasonable simply does not merit discussion in light of the clear cap established by KRS 395.150. Assuming the fee to be reasonable, Respondent still failed to follow clearly defined procedures both for requesting and proving he was entitled to the additional compensation. Instead, he unilaterally paid himself over $100,000 in executor's fees in violation of DR 2–106(A).

The second improper fee allegation concerns Respondent's charges to the estate for his work as the estate's attorney. While receiving $101,500 as executor, Respondent also paid himself a total of $27,000 in attorney's fees from estate funds. Generally, a compensated executor cannot also receive fees for his work as an estate's attorney. *Clay v. Eager, supra* at 127. To receive dual compensation, one must have been appointed and identified as both executor and attorney in the will so as to evince the testator's intention that the attorney be compensated in both capacities. *Id.*

Respondent claims Ms. Pirtle named him as both in her will, but the record reveals otherwise. Respondent was named an *alternate* executor and his law firm was to provide legal representation for the estate. When Ms. Pirtle died, Respondent, although no longer a member of the firm named in the will, acted as attorney for the estate. Although these might be technical distinctions, under these facts, we cannot say that the testator intended Respondent to receive dual compensation as both attorney and executor for the estate.

Respondent has also failed to provide the required documentation corroborating the $27,000 to the estate. In a probate proceeding, "[n]o credit shall be allowed a fiduciary for disbursements, fees or services without legal evidence to support it." KRS 395.615. Even if Ms. Pirtle's will could reasonably be held to name Respondent both as executor and attorney, the attorney's fee, like the executor's commission, is not supported by the required evidence. Consequently, by receiving a $27,000 attorney's fee, Respondent violated DR 2–106(A).

The final excessive or illegal fee allegation concerns $5,000 in attorney's fees paid to Respondent as compensation for "pre-death services" to Ms. Pirtle. As with the two aforementioned fees received for work on the estate, Respondent failed to follow proper procedures and produced no substantive evidence justifying the charges. Instead, as with his executor's commission, Respondent simply took the fee out of the estate's funds without seeking approval or introducing any evidence in probate court to justify the disbursement. For that failure, we find Re-

spondent guilty of a third breach of DR 2–106(A).

■ Two of the counts considered by the Board arose out of Respondent's explanation on the first periodical settlement of the $27,000 in attorney's fees. The Board found Respondent violated DR 7–102(A)(3) by concealing or knowingly failing to disclose to the probate court a fact which he was required by law to reveal. The Board also found that, by misleading Ms. Tuck, Respondent also violated DR 1–102(A)(4), which prohibited a lawyer from engaging in conduct involving "dishonesty, fraud, deceit or misrepresentation."

KRS 395.610 provides that periodical settlements must include "an itemized statement of receipts and disbursements supported by vouchers accompanying the same." The first periodic settlement filed by Respondent contained the following payments for legal fees:

| | | | |
|---|---|---|---|
| 1 | 8–16–82 | Moberly, Zoeller & Celebrezze Attorney fee for L. Profumo | $ 5,000.00 |
| 27 | 12–16–82 | Moberly, Zoeller & Celebrezze Attorney fees for L. Profumo | $ 6,000.00 |
| 43 | 5–11–83 | Moberly, Zoeller & Celebrezze—Attorney fees for L. Profumo | $ 6,000.00 |
| 119 | 12–28–85 | Celebrezze & Profumo— Attorneys fees for L. Profumo | $10,000.00 |

Neither of the two payees were law firms with which Respondent was associated, but instead have been characterized as "expense-sharing" arrangements. The four checks written by Respondent to the two entities covered Respondent's expenses in connection with the arrangement and benefited him directly.

Respondent argues that the above-quoted information clearly indicates that the attorney's fees went to him, but the payments listed on the periodical settlement are ambiguous at best. One can fairly read the information to mean that the payments were for the payees' representation of Respondent in his capacity as executor. The nature of the payments could have been much clearer, and should have been. The burden of inquiry should not be on the beneficiary when dealing with a fiduciary (or, for that matter, on the court when dealing with an attorney).

In a vacuum, such a violation might not be grounds for discipline. When the listings on the periodic settlement are examined in conjunction with Respondent's other actions, however, the vague nature of the listings becomes suspect. Respondent's continued course of professional misconduct suggests the ambiguities at issue were deliberate misrepresentations to the court and the ultimate beneficiary, as opposed to a mere failure to follow prudent procedures. For that reason, we also find the Respondent guilty of violating DR 7–102(A)(3) and DR 1–102(A)(4).

■ The final allegation of misconduct arises out of the sale of the testator's residence. Respondent's real estate company, L.S. Profumo Realty, Inc., handled the listing and sale of the home. The company received a commission on the sale totalling $22,750. Of that sum, $11,500 went to Respondent; an employee of L.S. Profumo Realty received the remainder.

For accepting the commission, the Board found Respondent guilty of violating DR 5–101(A), which prohibited a lawyer from accepting employment if "the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interest" unless the client consents after full disclosure.

By utilizing a realtor in which he had a financial interest, Respondent stood to gain a considerable amount of money. Respondent should have recognized the potential problem and obtained Ms. Tuck's consent before selling the home.

Respondent cites several facts in defense of his actions. He points out that the commission was reasonable, the estate ultimately profited from the sale and Ms. Tuck knew he planned to sell the house. Those facts, while true, do not excuse his actions. The reasonableness of the commission and the ultimate benefit to the estate are irrelevant. The fact that an estate lost nothing does not mean that the attorney who mismanaged the estate is not culpable. *See Louisville Bar Ass'n v. Hubbard,* 282 Ky. 734, 139 S.W.2d 773 (1940). And while Ms. Tuck apparently knew of the impending sale of the house, nothing sug-

gests that Respondent advised her of the potential conflict or directed her to seek the advice of independent counsel. As a fiduciary, Respondent had a responsibility to disclose fully the possibility of a conflict of interest and receive Ms. Tuck's approval prior to acting. The burden to investigate the executor's every action should not fall on Ms. Tuck, as Respondent repeatedly appears to argue, and we find Respondent guilty of violating DR 5–101(A) as well.

 Of course, the findings of fact by the trial commissioner and the Board of Governors are advisory in nature. SCR 3.360(1); SCR 3.370(7). This Court makes an independent review of the record and findings of fact. *Kentucky Bar Ass'n v. Berry*, Ky., 626 S.W.2d 632 (1981). But to paraphrase *Louisville Bar Ass'n v. Hubbard, supra*, the manner in which Respondent handled this estate shows he either had sinister motives or was an incompetent lawyer, and since he himself submitted proof showing his experience in handling estates, there is only one conclusion.

Respondent, as executor, attorney, and trustee, found himself in a unique position to take advantage of the trust placed in him by Ms. Pirtle. By illegally taking over $100,000 from the estate in a variety of fashions, he has demonstrated himself unfit to practice law. While he asks for a private reprimand, having reviewed the record, we agree not only with the findings of guilt but believe that the degree of discipline recommended by the Board of Governors is too lenient by far.

The Respondent, Lawrence S. Profumo, Sr., is adjudged guilty as charged of three violations of DR 2–106(A), one violation of DR 7–102(A)(3), one violation of DR 1–102(A)(4), and one violation of DR 5–101(A). Given the number and gravity of the violations, it is our opinion, and we so order, that Respondent is hereby suspended from the practice of law for three years. The fact the Respondent has reimbursed the estate in full for the excessive charges does not mitigate his illegal collection of the money in the first place, when he did so only after judgment was entered against him.

The Respondent, Lawrence S. Profumo, Sr., shall, within ten (10) days of the date of entry of this order, notify all courts in which he has matters pending and all clients for whom he is actively involved in litigation and similar legal matters of his inability to represent them, and of the necessity and urgency of promptly retaining new counsel. Such notification shall be by letter duly and timely placed in the United States Mail, and the Respondent shall simultaneously and in the same manner provide a copy of all such letters to the Director of the Kentucky Bar Association.

The Kentucky Bar Association shall have from the Respondent, Lawrence S. Profumo, Sr., recovery of costs of this matter in the amount of $5,024.41, pursuant to SCR 3.450(1).

All concur.

ENTERED: September 26, 1996.

/s/ Robert F. Stephens
Chief Justice