**Supreme Court of Kentucky** FINAL

2012-SC-000413-KB

DATE 12-4-12 EwAGrowthDk

KENTUCKY BAR ASSOCIATION                                    MOVANT


V.                          IN SUPREME COURT


EDWARD L. JACOBS                                       RESPONDENT


## OPINION AND ORDER

Pursuant to SCR 3.370,[1] Respondent, Edward L. Jacobs, KBA Member

No. 35408, seeks review of the Findings of Fact, Conclusions of Law, and

Recommendations of the Board of Governors of the Kentucky Bar Association

entered July 13, 2012.  Respondent was admitted to the practice of law in

Kentucky on October 22, 1980, and his bar roster address is 26 Audubon

Place, Fort Thomas, Kentucky, 41075.

The Board found that Respondent violated:  Count I: SCR 3.130-1.5(a)[2]

(requiring that a lawyer charge a reasonable fee); Count II: SCR 3.130-1.15(a)

(requiring a lawyer to hold his funds separate from his clients' funds); and

Count III SCR 3.130-1.15(b) (requiring the prompt delivery of funds or property

---

[1] SCR 3.370(8) states that "the Respondent may file with the Court a notice for the Court to review the Board's decision within thirty (30) days after the Board's decision is filed with the Disciplinary Clerk, stating reasons for review, accompanied by a brief supporting his/her position on the merits of the case."

[2] All references to the Model Code of Professional Conduct refer to the version and Supreme Court Rule number in effect at the time the alleged violations occurred.

to whoever is entitled to it and to provide a full accounting if requested), and recommended that he be suspended from the practice of law for thirty days and attend remedial ethics training. After reviewing the record, we agree with the Board's findings, adopt their recommendations, and reject Respondent's arguments in opposition to the Board's determinations and conclusions.

## I. FACTUAL AND PROCEDURAL BACKGROUND: KBA FILE 13262

All of the charges in this case concern Respondent's conduct while acting as both Executor and Attorney for the Estate of Sylvia Smith. On April 26, 1999, Smith executed a Will prepared for her by Respondent. Article VI of the Will nominated Respondent to serve as Executor of the Estate; no provision of the Will, however, provided that he was to serve as Attorney for the Estate. On April 20, 2001, Smith died from injuries suffered in a motor vehicle accident while a passenger in a motor vehicle she owned, which was being operated by her daughter. On November 2, 2001, Respondent filed the Will for probate in Campbell District Court, initiating Case Number 01-P-00543. The court appointed Respondent as the Executor of the Estate.

On December 26, 2002, Respondent mailed a letter to the heirs in response to their inquiries regarding the Estate. Respondent advised them that he would be acting as both the Attorney and the Executor for the Estate; that his fee would be equal to five percent of the assets passing through the Estate; that he would be entitled to his hourly rate of $200.00 for defending any claims against the Estate; and that normally his fee is taken at the beginning of his representation of an estate.

2

Five claims were filed against the Estate. Three of the claims were from heirs of the Estate for reimbursement of various expenses incurred for the benefit of the decedent. Two of the claims were allowed. The fourth claim was filed by a passenger of the other vehicle involved in the traffic accident that resulted in the death of the decedent. This claim was ultimately denied. The final claim related to a condemnation action by the Kentucky Transportation Cabinet regarding land owned by the decedent. As a result of a settlement of this claim the Estate received $220,000.00.

During the administration of the Estate, Respondent wrote seven checks to himself from Estate funds. These checks were listed in the Disbursements section of the Final Settlement of the Estate. The listed total receipts for the Estate were $469,227.71. The seven disbursements from Estate funds to the Respondent were identified in the Final Settlement as follows:

| Date | Amount | Description |
| --- | --- | --- |
| 11/13/01 | $5,500.00 | Edward L. Jacobs Fee |
| 12/14/01 | $4,500.00 | Edward L. Jacobs Fee |
| 01/11/02 | $645.40 | Edward L. Jacobs Fee (attorney fee thru October 18, 2001) |
| 3/29/02 | $5,000.00 | Edward L. Jacobs Fee |
| 06/04/02 | $5,000.00 | Edward L. Jacobs Fee |
| 06/17/02 | $20,000.00 | Edward L. Jacobs Fee |
| 08/01/02 | $10,000.00 | Edward L. Jacobs Fee |

The $50,000.00 in fees collected by Respondent in his capacity as "Attorney and Executor for the Estate" totals more than ten percent of the total

3

value of the Estate. The Respondent did not deposit any of these disbursed funds into an account separate from his own personal funds, but rather, he treated them as earned at the time of disbursement. Moreover, Respondent did not request approval from the court for the $645.40 disbursement to himself from Estate funds for attorney fees he claimed were owed to him by decedent for work done prior to her death. Nor did Respondent seek or obtain approval from the court to serve in the dual capacity of both Attorney and Executor for the Estate; nor did he seek court approval for any of the fees distributed to himself. Nor did the Respondent submit any proof to the court for compensation predicated on "unusual or extraordinary" services to the Estate as set forth in KRS 395.150(2).

On September 17, 2003, an heir of the Estate wrote to Respondent on behalf of all the heirs requesting an "itemized bill to date as to your fees reflected in the Disbursements." In response to this request, Respondent provided a document captioned "Sylvia Smith Estate Client Service Record." That document provides brief descriptions of activities and lists a date for each activity from November 1, 2001 to August 25, 2003. There are no entries reflecting the time devoted to any of the activities and no specific indications reflecting whether any activity was conducted in the capacity of Executor or Attorney for the Estate.

Heirs of the Estate of Sylvia Smith challenged the fees charged to the Estate by the Respondent after the Final Settlement was filed. By Agreed Order

dated August 11, 2004, the Respondent agreed to return to the Estate the amount of $20,000.00.

## A. KBA Proceedings

As a result of Respondent's representation of the Estate of Sylvia Smith, the KBA Inquiry Commission charged Respondent with three counts of professional misconduct as follows:

**Count I** - Violating SCR 3.130-1.5(a), which provides that "[a] lawyers' fee shall be reasonable." The Commission alleged that Respondent violated this rule by collecting fees from the Estate as both its Attorney and Executor without seeking approval from the court, and by collection of fees of more than twice the maximum authorized by KRS 395.150(1) as compensation for an Executor based upon an estate value of $469,277.71, including his claims for attorney services not authorized in the Will or by the court. In addition, the Commission alleged that he violated this rule by collecting from the Estate, without seeking or obtaining approval from the court, a fee of $645.40 for pre-death legal services of the decedent.

**Count II** -Violating SCR 3.130-1.15(a), which provides that "[a] lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from a lawyer's own property." The Commission alleged that Respondent violated this rule by not depositing advanced, unearned, fee payments from the Estate in an account separate from Respondent's own property.

5

***Count III*** – SCR 3.130-1.15(b), which provides that "[u]pon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." The Commission alleged that Respondent violated this Rule by failing to provide an itemized accounting of the fees he charged to the Estate after he received a written request from the heirs for such an accounting.

As a result of the above alleged violations, the Office of Bar Counsel sought a two-year suspension from the practice of law. Respondent timely filed an answer to the charges, and Frank H. Warnock was appointed by the Chief Justice to preside over the case. On May 4, 2011, an evidentiary hearing was held at which the Office of Bar Counsel and Respondent presented testimony and exhibits in support of their respective positions. On August 23, 2011, the trial commissioner filed his Report with the Disciplinary Clerk in which he recommended that Respondent be found guilty (in part) of Count I and not guilty of the other two counts.

As to Count I, the trial commissioner determined that Respondent had indeed violated the excessive fee rule pursuant to the five percent limitation contained in KRS 395.150 and the separate compensation provisions applicable to one who serves as both the Executor and Attorney of an Estate

6

pursuant to *Morgan v. Meacham,* 130 S.W.2d 992 (Ky. 1938). The trial Commissioner further determined, however, that because of the *de minimus* amount involved, and the undisputed validity of the debt, it was not ethically necessary for Respondent to have sought court approval for the $645.40 in fees he paid himself for services rendered prior to Smith's death. *Cf., Kentucky Bar Ass'n v. Profumo,* 931 S.W.2d 149 (Ky. 1996).

The trial commissioner found Respondent not guilty under Count II because he determined, without citation, that "an Executor's commission is normally a flat percentage fee and is not based upon an hourly charge." The trial commissioner believed that Respondent had been forthright with the heirs from the beginning about the amount of fees he would be charging and made no attempt to hide his conduct, and observed that "[t]his is not a normal situation where an hourly fee is charged against the retainer and the unearned portion of the retainer must be kept in escrow until earned by hourly services." From these factors, the trial commissioner concluded that Respondent was not required to segregate his fee disbursements from the Estate from his own personal funds.

With regard to Count III, the trial commissioner determined that Respondent did not fail to promptly turn over property to whom it was entitled, or fail to provide an accounting of funds held because "the Respondent testified under oath that it was his belief that he was charging a flat fee and when an accounting was requested of him he furnished a 14 page narrative statement of the services he had performed for the estate. Since the Respondent, in his

7

mindset, was not charging an hourly fee but rather charging a flat fee, a 14 page narrative summary of his services appears to be an adequate response to the request for accounting and not in violation of Supreme Court Rule 3.130-1.15(b)."

As the sanction for charging an excessive fee as set out in Count I, the trial commissioner recommended a private reprimand. Bar Counsel filed a motion to amend the report, which the trial commissioner denied. Bar Counsel subsequently filed an appeal with the Board of Governors requesting a *de novo* review of the case. Pursuant to SCR 3.370(6),[3] the Board of Governors rejected the commissioner's report and reviewed the file *de novo*.

Following its review, the Board found that Respondent violated Count I: SCR 3.130–1.5(a) (requiring that a lawyer charge a reasonable fee) by a vote of 17-0, and that he violated Count II: SCR 3.130–1.15(a) (requiring a lawyer to hold his funds separate from his clients' funds) by a vote of 17-0, and that he violated Count III SCR 3.130–1.15(b) (requiring the prompt delivery of funds or property to whomever is entitled to it) by a vote of 11-6. The Board recommended that Respondent be suspended from the practice of law for thirty days and be required to attend remedial ethics training.

Respondent then filed a notice to this Court seeking review pursuant to SCR 3.370(8).

---

[3] SCR 3.370(6) provides, in pertinent part that "[t]he Board shall decide, by a roll call vote, whether the decision of the Trial Commissioner as to the finding of a violation and degree of discipline imposed is supported by substantial evidence or is clearly erroneous as a matter of law. The Board, in its discretion, may conduct a review de novo of the evidence presented to the Trial Commissioner. Both the findings and any disciplinary action must be agreed upon by eleven (11) or three-fourths (3/4) of the members of the Board present and voting on the proceedings, whichever is less."

## II. ASSESSMENT OF GUILT

"The findings of fact by the trial commissioners and the Board of Governors [in a disciplinary proceeding] are advisory only." *Kentucky Bar Ass'n v. Berry,* 626 S.W.2d 632, 633 (Ky. 1981). "Final decisions of guilt and punishment *can only be made by the Supreme Court,* and it is done on the basis of a *de novo* consideration of pleadings and trial review." *Kentucky Bar Ass'n v. Jones,* 759 S.W.2d 61, 63-64 (Ky. 1988).

In opposition to the charges against him, Respondent alleges that the facts in support of the charges have been presented in an "overly-narrow and selective view" of the evidence; and that Bar Counsel has raised "technical and non-prejudicial" issues concerning the actions of Respondent with regard to the Estate. He complains that the findings and reasoning of the Board misstate his actual conduct and the good faith nature of his actions, and fail to recognize the strong mitigating circumstances surrounding his representation of Smith before her death and of her Estate after her death.

Upon reviewing the record, we adopt the Board of Governors' findings, adopt their recommendation, and reject Respondent's arguments in opposition to the Board's determinations and conclusions.

*Count I* - A review of the record demonstrates that Respondent violated SCR 3.130-1.5(a) by collecting amounts from the Estate as both lawyer and Executor without seeking the prior approval from the court, and by the collection of fees more than twice the maximum authorized by KRS 395.150(1) as compensation for an executor based upon an estate value of $469,277.71, including his claims for attorney services not authorized in the Will or by the

9

Court. In addition, he violated this rule by collecting from the Estate, without seeking or obtaining approval from the court, a fee of $645.40 for pre-death legal services of the decedent; in this vein, we do not believe the comparatively small amount at issue excuses compliance from the obligation to obtain the probate court's approval for an attorney acting as the executor for an Estate to make a self-disbursal to himself.

Further, KRS 395.150(1) limits the compensation of an executor for services to five percent of the value of the personal estate of the decedent, plus five percent of the income he collects. Notwithstanding this limit, KRS 395.150(2)(a) provides that "[u]pon proof submitted showing that an executor, administrator or curator has performed additional services in the administration of the decedent's estate, the court may allow to the executor, administrator or curator such additional compensation as would be fair and reasonable for the additional services rendered, if the additional services were: (a) Unusual or extraordinary and not normally incident to the administration of a decedent's estate[.]" In addition, "[i]f a court finds an executrix is deserving of pay for extraordinary services over and above the usual commission, it should make a specific finding to that effect. Without such a finding, the excessive fee should be disallowed." *Hale v. Moore*, 289 S.W.3d 567, 583 (Ky. App. 2008); *see Panke v. Louisville Trust Co.*, 198 S.W.2d 313 (Ky. 1946). It is undisputed that no such specific finding was made by the probate court in this case.

Further, it is well-settled that an attorney who accepts appointment as an executor cannot also serve as legal counsel for the estate *and receive dual*

*compensation for the additional role,* absent approval of such an arrangement in the will. *Clay v. Eager,* 444 S.W.2d 124 (Ky. 1969); *Profumo,* 931 S.W.2d at 151 ("To receive dual compensation [as executor and estate's attorney], one must have been appointed and identified as both executor and attorney in the will so as to evince testator's intention that the attorney be compensated in both capacities.").

Here, Respondent concedes that he acted as both Executor and as Attorney for the Estate. Therefore, it is clear that Respondent violated *Profumo* and KRS 395.150(2) in at least two ways: (1) because he took executor fees for "unusual or extraordinary" services from the Estate account without the prior consent and approval of the probate court[;]" and (2) by failing to provide the required documentation corroborating the fees for "unusual or extraordinary" services.

Additional compensation is allowed only upon consent of the court and after submission of proof detailing the services rendered. KRS 395.150(2). As a result, "Respondent cannot rely on this exception since he neither asked the probate court to allow additional compensation nor presented evidence to the probate court justifying the fee." *Profumo,* 931 S.W.2d at 150. Thus, because Respondent had not met the statutory requirements for entitlement to more than five percent of the Estate, the fee he disbursed in excess of this amount was necessarily an unreasonable fee. That the fee disbursements were unreasonable is further supported by his having to return $20,000.00 of the amounts disbursed.

11

We thus agree with the Board that Respondent violated SCR 3.130-1.5(a), charging an unreasonable fee, in regard to the conduct described in Count I.

**Count II** - The record further demonstrates that Respondent violated SCR 3.130-1.15(a) by not depositing advance unearned fee payments from the Estate into a separate account, and instead depositing those funds into his own general office account. Respondent's guilt under Count I, and his depositing of the fees as described in our discussion above into his office accounts, necessarily compels the result he failed to keep separate unearned fees from his personal accounts. That is, because Respondent was not entitled to those amounts, but nevertheless received them and deposited them into his office accounts, he by definition violated SCR 3.130-1.15(a). Further, that unearned fees were deposited into his office account is clearly demonstrated by Respondent's agreement that he had overcharged the Estate and agreeing to refund $20,000.00. The $20,000.00 refund was paid from Respondent's office accounts, not a client trust account, and thus it further demonstrates that the Rule was violated. We reject Respondent's argument that his "mindset" was that all amounts were pursuant to a flat fee, and thus his conduct is excusable. As explained in our discussion above, the law is well-settled in this area and therefore his unawareness is no excuse. Finally, we will not distinguish between "unearned" funds, in the traditional sense, from funds that are theoretically "earned," but are barred by statute from disbursement without the probate court's approval. It further bears emphasis that this issue

12

deals with a lawyer's handling of client and third-party funds, and it is fundamental that such rules will be strictly enforced.

*Count III* - The record also reflects that Respondent violated SCR 3.130-1.15(b) by failing to provide an itemized accounting of the fees he charged to the Estate after he received a written request from the heirs for such an accounting. In September 2003, an heir of the Estate wrote to the Respondent on behalf of all the heirs requesting an "itemized bill to date as to your fees reflected in the Disbursements." In response to this request, Respondent provided a document captioned "Sylvia Smith Estate Client Service Record." That document provides brief descriptions of activities and lists a date for each activity from November 1, 2001 to August 25, 2003; however, there are *no entries* reflecting the *time* devoted to any of the activities and no specific indications reflecting whether any activity was conducted in the capacity of Executor or Attorney for the Estate. The Rule provides that "upon request by the client or third person, [a lawyer] shall promptly render *a full accounting* regarding such property." SCR 3.130-1.15(b) (emphasis added). We are persuaded that in the context of a lawyer providing an accounting of fees charged to a client, fundamental to that process is a reflection of the *time* spent on each of the relevant tasks. While in the case of a true flat fee that may be irrelevant; nevertheless, here, Respondent had informed the heirs at the outset that he would be charging $400.00 per hour for his services in his dual capacity as attorney for the Estate. Therefore, we emphasize that in the usual case when a client is being charged for lawyer's services at an hourly rate, and

13

perhaps with exceptions not applicable here, a demand for an accounting under the Rule will require a lawyer to include a representation of the time spent for each of the relevant services billed. Only in this way may a client assess whether the charges are reasonable so as to further pursue relief. Therefore, we are satisfied that the Board properly concluded that Respondent's communication in response to the request for an accounting fell short of this standard.

### III. ASSESSMENT OF PENALTY

As a result of the above alleged violations, the Office of Bar Counsel originally sought a two-year suspension from the practice of law. As noted, the Board recommends a thirty-day suspension with additional ethics training. Respondent argues that if his conduct supports any disciplinary sanction at all, the sanction should be limited to either a private or public reprimand, or a probated suspension, as a more balanced and appropriate resolution rather than the actual suspension recommended by the Board. Significantly, in his thirty-one years of practice prior to these charges Respondent has incurred no other disciplinary proceedings.

Upon consideration of the conduct and violations involved in this case, we agree with the Board that a thirty-day suspension is an appropriate sanction for these ethical violations. *See Kentucky Bar Ass'n v. Niemi,* 366 S.W.3d 921 (Ky. 2012) ("Attorney's misconduct in failing to keep client reasonably informed as to progress of workers' compensation case, in failing to return unearned fees, and in failing to respond to disciplinary authority's

14

complaint and requests for information warranted 30-day suspension from practice of law.").

ACCORDINGLY, IT IS HEREBY ORDERED that:

(1) Respondent, Edward L. Jacobs, is found guilty of violating SCR 3.130–1.5(a); SCR 3.130–1.15(a); and SCR 3.130–1.15(b);

(2) For these violations, Jacobs is hereby suspended from the practice of law for thirty days and required to attend the entire KBA Ethics and Professionalism Enhancement Program (EPEP) within one year of the date of this Order;

(3) Respondent will not apply for Continuing Legal Education credit of any kind for his attendance at the EPEP. He will furnish a release and waiver to the Office of Bar Counsel to review his records of the CLE Department that might otherwise be confidential, such release to continue in effect until after he completes his remedial education, in order to allow the Office of Bar Counsel to verify that he has not reported any hours to the CLE Commission that are to be taken as remedial education.

(4) In accordance with SCR 3.450, Respondent shall pay costs associated with these proceedings in the amount of $2,503.91, for which execution may issue from this Court upon finality of this Order.

Minton, C.J., Abramson, Cunningham, Noble, Scott and Venters, JJ., concur. Schroder, J., not sitting.

ENTERED: November 21, 2012.

_____
CHIEF JUSTICE

15

# Supreme Court of Kentucky

2012-SC-000413-KB

KENTUCKY BAR ASSOCIATION                                                    MOVANT


V.                                     IN SUPREME COURT


EDWARD L. JACOBS                                                        RESPONDENT


### ORDER CORRECTING

The Opinion and Order entered November 21, 2012, is corrected on its face by substitution of the attached Opinion and Order. Said correction does not affect the holding of the original Opinion and order of the Court.

ENTERED: November 28, 2012.

_____
CHIEF JUSTICE