Marie HALE;  Joyce Jackson;  Joseph D. Ledington;  Beatrice Lynn Slominsky; and Linda L. Wishart, Appellants,

v.

Jennifer Melissa MOORE;  Benny R. Adkins;  Lena Valda Allen;  Leah Carol Arnett;  Nina R. Baker;  Rose Brown;  Deborah A. Cardinale;  Susan D. Cook;  Cumberland College;  Estate of Irma Ray Brigman;  Estate of Joyce Hunt;  Estate of Robert Ledington;  Estate of Sharon Bond;  Estate of Thelma Hetkowski;  Fernandez, Friedman, Grossman, Kohn & Son, PLLC;  Maria A. Fernandez;  Janna M. Girolamo;  Brenda L. Hale;  Edsel E. Hale, Jr.;  Elma Lisle Hale;  Ina Fay Hale;  Jennifer Hale;  Kevin R. Hale;  Margaret Hale;  Robert D. Hale;  Victor Greg Hale;  Mary Holt; Walter R. Hunt;  Charles R. Ledington, Sr.;  Donald W. Ledington;  John Ledington;  Kerry L. Ledington;  Larry Glenn Ledington;  Robert V. Ledington;  Janice O'Neal;  Arthur E.

Ray;  C. Michael Ray;  Harold E. Ray; Kendall Ray;  Melanie Streiff;  Tamara Lynn Streiff;  Sue Bennett College, Inc.;  Wachovia Bank;  Gladys L. Webb;  and Vada Lee Wheeler, Appellees.

and

Maria A. Fernandez;  and Fernandez Friedman Grossman Kohn & Son, PLLC, Appellants,

v.

Marie Hale;  Joyce Jackson;  Joseph D. Ledington;  Beatrice Lynn Slominsky; and Linda L. Wishart, Appellees.

Nos. 2005–CA–001895–MR, 2006–CA–000662–DG.

Court of Appeals of Kentucky.

Jan. 4, 2008.

Rehearing Denied March 25, 2008.

Discretionary Review Denied by Supreme Court Aug. 19, 2009.

Robert A. Marshall, William H. Mooney, Stephen L. Collins, Louisville, KY, for appellants Marie Hale; Joyce Jackson; Joseph D. Ledington; Beatrice Lynn Slominsky; and Linda L. Wishart.

Maria A. Fernandez and Fernandez Friedman Grossman, Kohn & Son, PLLC, Peter L. Ecabert, Lexington, KY, for appellees.

Victor B. Maddox, Lynn K. Fieldhouse, Fultz Maddox Hovious & Dickens, PLC, Louisville, KY, for appellee, Wachovia Bank.

Frank A. Atkins, Williamsburg, KY, for Appellee, Cumberland College.

Before HOWARD,[1] NICKELL, and TAYLOR, Judges.

NICKELL, Judge.

Claudia E. Sanders ("Sanders"), widow of the late Colonel Harland Sanders of Kentucky Fried Chicken © ("KFC") fame and a restaurateur in her own right, died at the age of 94 in Shelby County, Kentucky, on December 31, 1996. Her last will and testament was admitted to probate in Shelby District Court in January 1997. During the administration of her estate, five heirs, collectively referred to here as "Hale," challenged distribution of the assets of her estate by filing exceptions to the sixth periodic settlement submitted to the district court by an attorney named Maria Fernandez ("Fernandez") in her capacity as executrix. Following a district court hearing on the accuracy of the periodic settlement, Hale filed an original action in Shelby Circuit Court against the remaining beneficiaries, Fernandez, and her law firm, Fernandez Friedman Grossman Kohn & Son, PLLC[2] ("law firm"). The original action addressed four issues: the amount of the fee earned by Fernandez as executrix of the Sanders estate; the amount of the fee, if any, earned by Fernandez as attorney for the Sanders estate; the amount of the fee, if any, earned by Fernandez's law firm for legal services provided to the Sanders estate; and finally, whether Fernandez, in her capacity as executrix, distributed assets of the Sanders estate as directed by the will and a separate trust agreement.

On March 18, 2005, the Shelby Circuit Court issued an opinion and order holding it had subject matter jurisdiction to hear the complaint under Kentucky Revised Statutes ("KRS") 395.510(1) which authorizes a legatee or distributee to file suit in circuit court to settle a probate estate. That same day, the Shelby Circuit Court allowed Hale to file an amended complaint adding the successor trustee, Wachovia Bank ("Wachovia"), as a defendant; raising the additional issue of whether the executrix had engaged in fraud; and demanding a surcharge and recovery of damages from the executrix. A few months later, on June 30, 2005, the Shelby Circuit Court vacated the March 18, 2005, opinion and concluded it did not, in fact, have subject matter jurisdiction because KRS 24A.120 vests exclusive jurisdiction of probate matters in the district court. The circuit court further stated there was no legal authority for it to hear an original action challenging an accounting by a personal representative in a probate case and remanded the entire matter to the district court for further proceedings. Hale has filed a direct appeal of the circuit court's June 30, 2005, order asking us to determine where subject matter jurisdiction lies when beneficiaries question the fees charged and decisions made by an executrix, allege fraud and mismanagement, and request a surcharge.

However, a pronouncement about which court has subject matter jurisdiction is only the beginning of our review, not the end. While Hale was pursuing the original action in Shelby Circuit Court, probate of the Sanders estate continued in Shelby District Court where Hale was raising the very same questions. In particular, Hale's probate challenge addressed whether the executrix charged an excessive fee and whether two colleges should have been

---

1. Judge James I. Howard concurred in this opinion prior to the expiration of his appointed term of office on December 6, 2007. Release of the opinion was delayed by administrative handling.

2. This law firm was previously known as Taustine, Post, Sotsky, Berman, Fineman & Kohn.

exempt from paying federal estate and state inheritance and estate taxes ("taxes") when Kentucky law requires such taxes to be paid "off the top" of an estate before any distribution is made[3] and the trust agreement signed by Sanders directed the residue was to be distributed in twelve equal shares.

Upon receiving an adverse ruling from the Shelby District Court on January 31, 2005, Hale appealed to the Shelby Circuit Court which issued an opinion and order on January 25, 2006. In that opinion, the circuit court held the district court abused its discretion and committed clear error in approving Fernandez's distribution of the Sanders estate without paying all of the taxes "off the top" and paying herself an excessive executrix fee, and remanded the entire matter to the Shelby District Court for additional proceedings. Fernandez and her law firm sought discretionary review of that ruling which we granted on June 30, 2006.

Because the present case combines the aforementioned direct appeal issue with matters before us on discretionary review, we must not only address where subject matter jurisdiction lies but also whether the Shelby Circuit Court erred in holding the Shelby District Court erroneously approved Fernandez's distribution and fees. More particularly, we must determine whether the record supports the circuit court's conclusion that Fernandez charged excessive fees and should have apportioned a share of the taxes to the two colleges. The lengthy procedural history of this case, now spanning more than a decade, justifies a thorough recitation of the facts.

## Facts and Procedural History

Claudia Sanders died having executed a will, a revocable trust agreement, and a first codicil to her will,[4] all of which were drafted by Fernandez or someone in her law firm. The will appointed Fernandez as executrix but said nothing about her serving as attorney for the estate. Without opposition, Fernandez was appointed executrix by the Shelby District Court. No one has requested her removal.

The opening paragraph of the will directed the executrix to "pay from my estate all of my just debts, funeral expenses, the costs of administering my estate, and all state and federal estate and inheritance taxes payable by reason of my death on all property or assets included in my estate and subject to such taxes." The second paragraph of the will made a specific bequest of $10,000.00 to the First Christian Church of Shelbyville. The third paragraph of the will specified that all other estate assets were to pour into a trust and be distributed according to the trust agreement executed by Sanders on October 19, 1993, the same day she signed the will.

Sanders received income from the trust throughout her life and upon her death it became irrevocable. Item V of the trust agreement stated that if Sanders' probate estate was insufficient to pay her debts, funeral expenses, the expenses of administering her estate, all taxes that became payable due to her death, and all pecuniary legacies made in her will, then the trustee was to deliver sufficient funds from the trust to the executrix to cover those amounts. Item VI of the trust agreement directed that upon Sanders' death the

3. *University of Louisville v. Liberty Nat. Bank & Trust Co.*, 499 S.W.2d 288 (Ky.1973).

4. The first codicil, executed on December 9, 1994, was merely a housekeeping measure to

reflect the changing name of the trustee. The original trustee was The Bradford Trust Company which today is known as Wachovia Bank ("Wachovia").

"[s]uccessor Trustee shall divide the assets in twelve equal shares to be distributed" to a detailed listing of siblings and other relatives. Item X of the agreement stated the trust "shall be construed and governed in all respects in accordance with the laws of the State of Pennsylvania."

The trust agreement further specified the one-twelfth share of the trust intended for a daughter who had predeceased Sanders without children was to be divided equally between Sue Bennett College[5] and Cumberland College.[6] The trust agreement said nothing about exempting these two colleges from the payment of taxes or treating them differently than any other beneficiary.

While the trust agreement provided for an advisory committee to be comprised of Sanders, Jill Bradley (Sanders' broker, "Bradley"), Gene Bobzien (Sanders' accountant, "Bobzien"), and Joyce Hunt (Sanders' sister), this committee's authority was limited to advising the trustee on matters *pertaining to the trust.* It was not intended to have any influence over administration of the Sanders estate. Of the four original members of the committee, three are now deceased and Bradley cannot be found.

In addition to owning a considerable amount of personalty[7] at her death, Sanders also owned, either outright or held an interest in, various pieces of real property including two KFC locations in North Carolina and residential property in Lexington, Corbin and Shelbyville, Kentucky. The KFC leases were managed by Claudia Realty, Inc., a North Carolina "C" corporation created by Sanders. Fernandez stated in an affidavit that she served as Chief Executive Officer ("CEO") of the corporation from January 1, 1997, the day after Sanders' death on December 31, 1996, until its dissolution on December 9, 2003. We find no independent verification of her service as CEO in the record nor any indication as to whether her assumption of the duties as CEO had been contemplated by Sanders prior to her death.

Upon being named executrix, Fernandez, with assistance from her law firm, set about administering the Sanders estate. According to Fernandez, whatever needed to be done—they did. This included settling, at the expense of the Sanders estate, the estates of Thelma Hetkowski, (Sanders' sister), and Elvis Ray Price, (Sanders' son).[8] Neither Sanders' will nor the trust agreement provided for her estate to pay such expenses. Additionally, neither Fernandez nor her law firm had a letter of engagement to perform legal work for the Sanders estate.

By mid–1999, Wachovia[9] was ready to distribute the trust assets. However,

5. On January 6, 2005, a bankruptcy trustee for Sue Bennett College filed an answer and counterclaim stating all funds received from the Sanders estate had been co-mingled with other funds and designated for distribution to creditors. Thus, the entity alleged it could not return any funds to the executrix if ordered to do so by the circuit court.

6. Cumberland College became known as University of the Cumberlands in January 2005.

7. The value of Sanders' personalty on the date of her death was approximately $1,682,605.00.

8. Hetkowski and Price died intestate after the death of Claudia Sanders and during administration of the Sanders estate. According to Fernandez, neither had any assets at death. While Price was excluded from the trust because Sanders did not wish to jeopardize government benefits he was receiving, he did receive proceeds from the trust as an heir of Hetkowski.

9. At oral argument before this Court, counsel for Wachovia characterized it as a nominal party in this litigation. According to counsel, Wachovia did not receive notice of any hearings in the lower courts and did not partici-

the estate had not yet been settled, in part because the North Carolina property had not been sold. To complete its duties, Wachovia proposed a plan whereby all beneficiaries were asked to sign an Approval, Waiver, Receipt, Release and Indemnification Agreement ("release"). According to the plan, as soon as all beneficiaries signed releases, Wachovia, a Pennsylvania company, would transfer all trust assets to Fernandez and Fernandez would then distribute the assets to the remaindermen, thus extinguishing Wachovia's role as trustee. Wachovia prepared and forwarded a letter to each trust beneficiary stating that unless everyone signed the enclosed release there would likely be additional expense and substantial delay in distribution of the trust's assets. The letter mentioned nothing about the two colleges being exempt from paying taxes. However, the following sentence does appear on page two of the four-page release:

> Distribution from the probate estate will take into account allocation of Federal Estate Tax and Kentucky Inheritance and Estate Tax among the individual and charitable remaindermen as the shares distributable to charity will not be charged with responsibility for such taxes.

None of the documents provided to the beneficiaries cited any authority for exempting the colleges from sharing the estate's tax burden.

Ultimately, all the beneficiaries, including Fernandez as personal representative of the Hetkowski estate and administratrix of the Price estate, signed releases. In so doing, each beneficiary agreed he understood the terms of the release and was "satisfied that he [had] sufficient informa-tion to make an informed waiver of his right to a formal accounting with the Court." Furthermore, without being advised the result would be different if Kentucky law were applied, each beneficiary agreed the trust would be administered under Pennsylvania law. Despite testimony from Fernandez that she considered herself to be representing both the Sanders estate and its beneficiaries, she provided no independent information to the heirs about the potential ramifications of signing the proposed release. Since, according to Fernandez's understanding of Pennsylvania law, the two colleges were not to be assessed a portion of the taxes, the other beneficiaries paid an additional $98,000.00 in taxes.

On September 30, 1997, Fernandez filed a Form 706 federal tax return and a Kentucky Resident Inheritance and Estate Tax Return on behalf of the estate. She listed her executor's fee as $175,000.00 on Schedule J of both documents.

Beginning in March 1999, Fernandez filed with the district court a total of seven periodic settlements on behalf of the estate. The only potential fee for any legal work due Fernandez and/or her law firm for settling the estate appears in the sixth installment which was not filed until March 2004. The disbursement on this document simply lists the name of her law firm and the amount of $7,227.76. No reason for the charge is given. In her October 29, 2004, deposition, Fernandez testified $5,000.00 of this amount represented payment for services rendered and the rest was for expenses. This is the only bill Fernandez or her law firm submitted to the estate of which the district court had any knowledge.

pate in them. Further, Wachovia argues it is insulated from liability as a result of the releases executed by all the beneficiaries. Wa-chovia has asked to be dismissed from this appeal.

However, Fernandez and her law firm were generating other billable hours. In fact, they billed the entire $175,000.00 fee projected on the state and federal tax returns. The bills were difficult to recognize because they were spread amongst three entities, the estate, the trust and Claudia Realty, Inc.

Fernandez testified she submitted bills to Claudia Realty, Inc. for $50,000.00 and $60,000.00 on the advice of Bobzien, Sanders' accountant and a member of the Sanders trust advisory committee.[10] Fernandez candidly admitted she did not perform $110,000.00 worth of work for the corporation. In fact, she said her work on behalf of the corporation was mostly reviewing leases that were up for renewal and then ultimately dissolving the corporation. She testified the bills were submitted to the realty corporation because it still had a stream of income and this maneuver would yield the greatest tax advantage. However, when these bills were submitted, they were identified only as charges for *professional services*, they were coupled with bills for accounting services provided by Bobzien, and they gave no hint of the nature or extent of the work that was actually performed.

To put this into perspective, Claudia Realty, Inc. received a bill in the amount of $50,740.00 for *professional services* in 1999. Fernandez testified that of this amount, Bobzien would have received $740.00 for preparing the 1998 tax return and Fernandez and her law firm received the remaining $50,000.00 for unspecified work. This process was repeated in 2000 when a bill for *professional services* in the amount of $60,833.00 was submitted to Claudia Realty, Inc. According to Fernandez, Bobzien received $833.00 of this amount for preparing the 1999 tax return

and the remaining $60,000.00 went to Fernandez and her law firm for more unspecified work. In addition to the $110,000.00 billed to Claudia Realty, Inc., the trust also paid Fernandez and her firm $50,000.00 even though Fernandez described her work for the trust as "nominal" and admitted in her deposition that she did no legal work for the trust.

Fernandez further testified at her deposition that Bobzien told her the $175,000.00 executrix fee had been approved by the trust advisory committee. However, Fernandez admitted the committee's authority was limited to advising the trustee about the trust and it's authority did not extend to administration of the estate.

As early as March 3, 2000, Marie Hale, Sanders' niece, began voicing concern about the estate. More than two years later, on July 8, 2002, the district court scheduled a hearing to explore her concerns. On November 10, 2003, Marie Hale and Joyce Bishop, another of Sanders' nieces, appeared in district court and objected to the settlement of the estate. On December 8, 2003, the district court "informally conferenced" with Marie Hale, Joyce Bishop and Linda Wishart, Sanders' great niece. That same day, the district court approved the fifth periodic settlement.

On January 23, 2004, Fernandez answered a letter sent to her by Marie Hale seeking specific information about fees that had been paid by both the estate and the trust. Fernandez responded that a total of $5,000.00 had been paid to Fernandez and her law firm by the estate; a total of $60,000.00 had been paid to Fernandez and her law firm by the trust; $1,000.00 had been paid by the estate for preparation of the 2003 fiduciary tax return; and Fernandez did not know how much the

---

**10.** According to Fernandez's deposition, the trust advisory committee had ceased to exist when these bills were sent to Claudia Realty Inc.

trust had paid in accounting fees. Fernandez also volunteered that Claudia Realty, Inc. had paid fees to Fernandez's law firm at Bobzien's suggestion but did not reveal the amount. She ended by saying the total fee paid to her firm and to her for serving as executrix and attorney for the estate was $175,000.00. She also said she did not assess any fees for handling the Hetkowski and Price estates.

On April 12, 2004, objections were again voiced by Hale about the fees charged by the executrix. This was followed by Hale's filing of exceptions to the sixth periodic settlement on July 23, 2004. Hale objected to the check issued to Fernandez's law firm as exceeding the statutory maximum and also objected to checks written to the two colleges in the amount of $65,325.52 as exceeding their intended share of the trust proceeds. Hale asked the district court to order Fernandez to recover and restore the erroneous payments to the estate and also asked for a complete accounting of all documents, files, orders, petitions, and papers pertaining to the estate.

When Fernandez was deposed in 2004, she testified she had been practicing law for fourteen years with most of her practice being devoted to estate planning, probate and administration. She testified she is not licensed to practice law in Pennsylvania and while she did not recall how the $175,000.00 executrix fee came to be, she acknowledged it was a percentage of the value of the *total gross estate* which was around $4,080,000.00. She acknowledged she is entitled to a fee as executrix but cannot charge for legal services in addition to her fee as executrix.

When asked whom she thought she represented in regards to the estate, Fernandez stated both "the estate and the beneficiaries." She testified she administered the estate pursuant to the terms of the trust which was governed by Pennsylvania

law. Because the will called for any remaining assets of the estate to pour into the trust, Fernandez believed Pennsylvania law, not Kentucky law, applied to distribution of the estate. She admitted she did not tell the beneficiaries that under Kentucky law, the two colleges would have shared in the tax burden. Further, Fernandez acknowledged her work on the estate tax returns was not extraordinary or unusual and admitted she did not seek district court approval, as required by KRS 395.150, before billing for "additional fees" above the statutory maximum.

On November 8, 2004, Shelby District Court held a hearing to explore the executrix fee and the correctness of the distribution. Evidence at that hearing established the estate contained $1,682,605.00 in personalty and five percent of that amount would be $84,130.00. Income earned by the estate was calculated to be $63,437.00 and five percent of that amount would be $3,172.00. By Hale's calculations, the most Fernandez could have claimed as executrix under KRS 395.150, even with prior court approval, was $87,302.00. Following the hearing, both Hale and Fernandez were to file briefs with the district court. Fernandez filed proposed findings of fact and conclusions of law. Hale filed nothing in the district court in the wake of the hearing.

Instead, about a month after the district court hearing, on December 7, 2004, Hale filed an original action in Shelby Circuit Court asserting there was now an "adversary proceeding" and therefore the circuit court had sole jurisdiction over the matter by virtue of KRS 395.510. Fernandez and her law firm moved to dismiss the complaint alleging KRS 24A.120 gives the district court exclusive jurisdiction over probate matters. Fernandez argued Hale could appeal to the circuit court if she was ultimately dissatisfied with the district

court's ruling but she should not be allowed to simultaneously advance the same arguments in both district and circuit court.

On January 31, 2005, the Shelby District Court adopted the findings of fact and conclusions of law tendered by Fernandez and approved the sixth periodic settlement. In its opinion, the district court found: the will made one bequest to the First Christian Church of Shelbyville and specified all remaining assets of the estate were to pour into a trust that was governed by Pennsylvania law; all beneficiaries signed a release allowing the trustee to transfer its responsibilities to Fernandez; administration of the estate was complicated by slow real estate sales as well as state and federal tax audits; Fernandez submitted to the trust advisory committee for approval her $175,000.00 fee for serving as executrix and substitute trustee, and for legal services provided by her law firm; the $175,000.00 fee was billed to and paid by the trust, the estate, and Claudia Realty, Inc.; and finally, allocation of the $175,000.00 fee between these three entities was determined by Bobzien. The district court concluded the fee charged by Fernandez and her law firm, though more than the statutory maximum, was nevertheless "fair and reasonable" and properly charged against the estate because they performed additional "unusual and extraordinary services," much of it related to real estate as permitted by KRS 395.150(2)(a). The district court also concluded the distribution to the two colleges was governed by Pennsylvania law and therefore was not to be reduced by taxes.

Hale moved the district court to alter, amend or vacate [11] its findings and conclusions asserting that once an adversary proceeding was filed in circuit court, under Section 113(6) of the Kentucky Constitution, KRS 395.510(1), and KRS 24A.120, the district court no longer had subject matter jurisdiction. Without holding a hearing, the district court overruled the motion to alter, amend or vacate and approved the seventh and final periodic settlement on February 14, 2005.

Even though Shelby District Court had scheduled a hearing on the CR 59.05 motion for April 11, 2005, on March 16, 2005, Hale filed an appeal in the circuit court challenging the district court's findings and conclusions as well as its order overruling the motion to alter, amend or vacate. In the statement of appeal, Hale alleged: the district court was never told about $170,000.00 in fees charged by Fernandez and her law firm until beneficiaries complained; $110,000.00 of this amount was billed to Claudia Realty, Inc. for work Fernandez described as "nominal"; advance court approval was required, but never sought, for payment of nearly $90,000.00 in fees that exceeded the statutory maximum allowed to be claimed by an executrix; under both Kentucky law and the terms of the will, all the taxes should have been, but were not, paid "off the top" before any distribution was attempted; the trust agreement directed that all proceeds were to be distributed in twelve equal shares, therefore all beneficiaries, including the two colleges, should have shouldered the tax burden equally but they did not; Fernandez breached her duty both as an executrix and as a fiduciary by failing to advise the non-charitable beneficiaries their portion of the estate would be reduced by $98,000.00 because taxes were not being assessed against the colleges; unless specifically authorized by the will, Kentucky law prohibits receipt of dual compensation for serving as both an executrix and as an attorney for the same estate

---

11. This motion was made pursuant to Kentucky Rules of Civil Procedure ("CR") 59.05.

yet Fernandez and her law firm did both without authorization from either the will or the trust; although unauthorized by either the Sanders' will or the trust, Fernandez settled the Hetkowski and Price estates and billed the costs to the Sanders estate; billing the costs of settling these two estates may have constituted an ethical violation; Fernandez may have engaged in fraud and deceit by billing a total of $170,000.00 in fees to the trust and to Claudia Realty, Inc. to conceal them from district court review; and finally, the Shelby District Court lacked jurisdiction to issue findings of fact and conclusions of law because the filing of the original adversary action in Shelby Circuit Court vested jurisdiction of all contested matters from that point forward in the circuit court. Hale asked that the circuit court issue an order transferring jurisdiction to the circuit court of all activities occurring from December 7, 2004, forward.[12] Alternatively, Hale asked the circuit court to rule that the district court's findings and conclusions were clearly erroneous.

On January 25, 2006, the Shelby Circuit Court issued its opinion and order on the appeal from district court. The circuit court stated a "higher duty" was expected of Fernandez since she was not the usual executrix but was also an attorney. On the question of whether the two colleges should have paid a portion of the tax burden, the circuit court stated that while the trust may have been governed by the laws of Pennsylvania, administration of the estate was governed by the laws of Kentucky since Sanders was a Kentucky resident at the time of her death and her will was admitted to probate in a Kentucky court. The circuit court further stated that although each beneficiary signed a release agreeing that the two colleges would not pay any taxes, those waivers were not voluntary and intentional, and indeed were void, because Fernandez never fully disclosed to the beneficiaries the ramifications of signing the release.[13] The circuit court reasoned these heirs could not execute a valid release unless they had full knowledge of all the material facts and in this case clearly they did not have all the relevant details. Furthermore, the circuit court ruled that since the trust required distribution to be made in twelve equal shares, and the overriding legal goal is to carry out the wishes of the testatrix, the taxes should have been paid "off the top" of the estate before any residue was distributed. Thus, the circuit court ruled all twelve beneficiaries should have shared the tax burden equally as Sanders intended by the terms of the trust agreement she executed.

As for the reasonableness of the executrix fee, the circuit court held that Fernandez charged a fee well in excess of the statutory maximum without providing an itemized accounting of the work performed, without advance court approval, without demonstrating the work performed was extraordinary and unusual, and without showing the statutory maximum was inadequate. The circuit court

---

12. This is the date on which Hale filed the original action in Shelby Circuit Court which is now before us on direct appeal. If Hale is correct and the circuit court has subject matter jurisdiction, the findings of fact and conclusions of law issued by the district court on January 31, 2005, are void.

13. In a subsequent ruling issued on February 24, 2006, the circuit court restricted its comments about the releases being void to Fernandez's reliance upon them as personal representative of the estate. The clarification specified the ruling did not constitute a finding or substantive opinion about Wachovia's duties, the trust itself, nor the enforceability of the releases as they pertained to the estate and the trust beneficiaries.

further held Fernandez erroneously based her fee upon the value of the gross estate which ignores the statutory formula for calculating an executrix fee set forth in KRS 395.150(1). Moreover, the circuit court held she billed her services not only to the estate, but also to the trust and to Claudia Realty, Inc. for which Fernandez admitted she performed little work.

Additionally, the circuit court held that without specific authorization in the will, and therefore in violation of Kentucky law, Fernandez billed not only for work performed in her capacity as executrix but also as legal counsel for the estate. The circuit court also held that when needing legal assistance Fernandez did not hire an independent firm or solo practitioner, but instead employed the services of her own law firm which under the facts of this case was prohibited by the Rules of the Kentucky Supreme Court ("SCR") and Kentucky case law.[14] The circuit court held Fernandez also committed other errors such as charging the Sanders estate for settling the Hetkowski and Price estates without authorization to do so from either the will or the trust agreement and filing vague periodic settlements which had the effect, whether intended or not, of concealing fees from district court review.[15]

Ultimately, the circuit court held the district court abused its discretion in approving excessive executrix fees and exempting the two colleges from paying their share of the taxes. As a result, the circuit court reversed the district court's opinion and order and remanded the matter to the district court for further proceedings.

Thus, the same litigants, traveling separate paths but advancing the same arguments, have made their way to this Court. One has arrived via direct appeal and the other by way of discretionary review. We hold that as of December 7, 2004, the date on which Hale filed a complaint in Shelby Circuit Court and thereby initiated an adversary proceeding, the circuit court alone had subject matter jurisdiction of all the issues presented in this case. While the district court would have maintained jurisdiction over any *uncontested* probate issues, as the facts developed, *all the issues were contested* so there was nothing over which the district court retained authority to act.

**The Direct Appeal**

The only issue presented on direct appeal is which court has subject matter jurisdiction to hear a probate case that also alleges fraud, mismanagement and deception by the executrix and seeks a surcharge against the estate. Hale argues jurisdiction lies in the Shelby Circuit Court because KRS 395.510(1) allows a legatee or distributee to file an "adversary proceeding" in circuit court to settle an estate. She further argues a district court has no statutory authority to hear claims of fraud, mismanagement or deception by an executrix, and it cannot order a surcharge or assess damages. Finally, Hale contends the Shelby District Court lost subject matter jurisdiction when the complaint was filed in circuit court and any action taken by it since that time is void.

In contrast, Fernandez characterizes the circuit court complaint as nothing but an

---

**14.** *Kentucky Bar Ass'n v. Profumo,* 931 S.W.2d 149 (Ky.1996); *Douglas' Adm'r v. Douglas' Ex'r,* 243 Ky. 321, 48 S.W.2d 11 (1932); SCR 3.130(1.7).

**15.** The circuit court did not go so far as to say this constituted an ethical violation warrant-

ing suspension from the practice of law but recognized it could rise to that level under *Profumo, supra,* if it was done in an attempt to hide from the district court the true fees paid to Fernandez.

accounting matter which must be heard in Shelby District Court since KRS 24A.120(2) gives the district court exclusive jurisdiction over probate matters. Fernandez alleges the mere filing of a complaint that questions the distribution of an estate does not constitute the type of "adversary proceeding" needed to transfer jurisdiction to circuit court.

■ After considering both arguments, we agree with Hale and hold the circuit court has subject matter jurisdiction to resolve the issues raised in the complaint. While it is true that district courts have exclusive jurisdiction over probate matters in Kentucky, KRS 24A.120(2) clearly states they have no authority to hear "matters contested in an adversary proceeding. Such adversary proceeding shall be filed in Circuit Court in accordance with the Kentucky Rules of Civil Procedure and shall not be considered an appeal." The statute goes on to say, "[m]atters not provided for by statute to be commenced in Circuit Court shall be deemed to be nonadversarial within the meaning of subsection (2) of this section and therefore are within the jurisdiction of the District Court." KRS 24A.120(3). This issue turns on whether Hale's complaint initiated an "adversary proceeding." While our review of the statutes and case law discloses no general definition of that term, we believe Hale satisfied the threshold and limit our legal analysis to the particular facts before us.

*Lee v. Porter,* 598 S.W.2d 465 (Ky.App. 1980) is cited by both sides as the seminal case on subject matter jurisdiction relating to probate cases. Porter served as the committee and attorney in fact of an incompetent named Lee. He also served as administrator of Lee's husband's estate. Suit was filed in circuit court alleging Porter mismanaged the estate, made unwise investments, concealed from the court that the decedent was indebted to him, did not file a complete accounting of assets, and charged excessive fees. Lee's next friend asked the circuit court to remove Porter as administrator and committee, order a full accounting of Porter's activities plus reimbursement and a surcharge for sums lost by Porter's unwise investments, and enter judgment against the sureties. In holding the circuit court erroneously concluded it lacked jurisdiction, we wrote:

[a]t the outset, we feel it incumbent upon us to point out that by virtue of Section 113 of the Kentucky Constitution district courts are tribunals of limited jurisdiction and therefore, restricted to those matters and functions delineated by statutory enactment. We readily observe that a district court can appoint or remove a fiduciary in the ordinary course of the probate of an estate, but when issues of fraud, mismanagement or deception are involved, the cause of action addresses itself to a court of general jurisdiction especially when damages are sought.

*Id.* at 467. There is striking similarity in the allegations lodged against Porter and those made against Fernandez in the case *sub judice.* There is also great similarity in the relief requested in both cases. Seeing no reason to chart new ground, on the strength of *Lee,* we hold the Shelby Circuit Court had subject matter jurisdiction of the case from the moment Hale's complaint was filed in circuit court on December 7, 2004. We further hold that any action taken by the Shelby District Court since that date, including the issuance of findings of fact and conclusions of law on January 31, 2005, was void for lack of subject matter jurisdiction. *Field v. Evans,* 675 S.W.2d 3, 5 (Ky.App.1983).

We have followed the *Lee* analysis in other cases. In *Mullins v. First American Bank,* 781 S.W.2d 527, 528–9 (Ky.App. 1989), we stated:

KRS 394.240 provides for an action in circuit court by anyone "aggrieved by the action of the district court in admitting a will to record or rejecting it." Thus, it should be clear that the statutes, read together, require (1) that all proceedings for the admission to probate of a will or codicil be commenced in the district court; (2) that the district court must either admit or reject the instrument; and (3) that the district court retains jurisdiction over the matter until such time as a will contest, or adversary proceeding, is commenced in the circuit court. See 1 J. Merritt, *Probate Practice and Procedure* § 755 (2nd ed.1984), and R. Noe, *Kentucky Probate Methods*, Cumulative Supplement § 1.26 (1989). It is equally apparent from these statutes that an "adversary proceeding" is not, as urged by some of the appellees, created by the mere opposition of a party to the admission to probate of a will, and that such opposition does not therefore divest the district court of its jurisdiction or its duty to rule on the merits of the matter before it. Instead, the statute plainly provides for an original action in circuit court *after* the district court has rendered a decision to either admit or reject the will.

*See also Vega v. Kosair Charities Committee, Inc.,* 832 S.W.2d 895, 896 (Ky.App. 1992) (Party may "seek construction of a will in the circuit court by a separate action if the validity of the will is not in question....").

Under the facts presented to us, no one has challenged the validity of the Sanders will, hence we must conclude it was properly admitted to probate in district court. However, several beneficiaries have questioned the actions of the executrix in distributing the assets of the estate and the pour over trust. In particular, Hale challenges the method Fernandez used to calculate her fee as executrix and her rationale for distributing the trust pursuant to Pennsylvania law rather than Kentucky law. *Lee* and its progeny make clear that only a circuit court may consider the particular allegations raised by Hale. Thus, as stated in *Lee, supra,* at 468, "[Hale] had no alternative but to commence this action in the circuit court since the district court was without statutory power to render the judgment sought." Therefore, once the complaint was filed in circuit court, the district court retained jurisdiction over any uncontested matters, but in the context of this case, about the only uncontested matter was the fact that Claudia Sanders died having executed a will. Since the will was properly admitted to probate, *there were no uncontested matters* for the district court to resolve. Moreover, Hale's allegations were far more than an accounting matter as Fernandez contends. They gave rise to precisely the type of "adversary proceeding" contemplated in KRS 395.510(1). Thus, we reverse and remand the Shelby Circuit Court's order dated June 30, 2005, in which it concluded it lacked subject matter jurisdiction and remanded the entire matter to the Shelby District Court. We now direct the circuit court to exercise subject matter jurisdiction and to fully resolve all the issues raised by the parties, including Wachovia's request to be dismissed from the case.

### Discretionary Review Analysis

Having determined the Shelby Circuit Court has subject matter jurisdiction over the case, we now turn our attention to the two substantive claims which prompted Hale to file the complaint. The first question is whether two colleges should have been exempt from paying one-twelfth of the estate taxes. The second question is whether Fernandez paid herself an excessive fee. Our review of the circuit court's decision is limited to questions of law

which we review *de novo*. For the reasons explained below, we agree with the circuit court and hold all beneficiaries should have borne the tax burden equally and the executrix paid herself an excessive fee.

■■■ We address first whether the colleges should have been apportioned a one-twelfth share of the taxes. From our review of the will, the trust agreement, and the applicable case law, all the trust beneficiaries, including the two colleges, should have shouldered the tax burden equally. "[T]he rule in Kentucky is that the share of each legatee which contributes or adds to the amount of the federal estate taxes and state inheritance taxes shall bear its proportionate part of those taxes, unless the will 'indicates' a contrary intent." *University of Louisville, supra*, at 499 S.W.2d 288–9 (citing *McKinney v. Mt. Sterling Nat. Bank*, 310 Ky. 186, 220 S.W.2d 379 (Ky.1949)). In *University of Louisville*, the following language was held to require payment of taxes "off the top" of the estate before any distribution was made.

The first clause of the will is as follows:

"My debts, funeral expenses and costs of administration are to be paid and all Federal and State estate and inheritance taxes assessed against my estate and all beneficiaries therein named, are to be paid out of my estate."

In the second, third and fourth clauses Kettig made specific bequests of personal effects and money, primarily to friends.

The fifth clause commenced with these words: "The residue of my estate, of every kind and hwerever (sic) situated, will be divided by the executor into two (2) equal portions and held and distributed as follows:" The directed division was that one-half of the residue go to named educational, religious and chari-

table uses, and the other one-half to the testator's cousins.

*Id.*, at 289. By comparison, the Sanders will contained virtually the same language:

## ITEM I

1.1 I direct that my personal representative, hereinafter named, pay from my estate all of my just debts, funeral expenses, the costs of administering my estate, and all state and federal estate and inheritance taxes payable by reason of my death on all property or assets included in my estate and subject to such taxes.

## ITEM II

2.1 I hereby give and bequeath to THE FIRST CHRISTIAN CHURCH of Shelbyville, Kentucky, the sum of $10,000.00.

2.2 I hereby give, bequeath and devise the rest, residue and remainder of my estate, whether real, personal or mixed, of whatsoever nature and wheresoever situated, which I may own or have the right to dispose of at the time of my death to BRADFORD TRUST COMPANY, as Successor Trustee, under a Trust Agreement dated the 19th day of October, 1993.

Under the analysis announced in *University of Louisville*, it is clear to us that Sanders intended the taxes and debts she owed at her death to be paid before any assets were distributed. We draw support for this view from the fact that Sanders included language in the trust agreement directing that if her estate lacked sufficient funds to pay her debts and taxes, the trustee was to transfer sufficient assets to the executrix to settle the estate. We draw even more support for our view from the provision within the trust agreement directing that any assets of the trust were to be distributed in twelve equal shares.

Sue Bennett College and Cumberland College were specifically named in the trust agreement as the ultimate recipients of a one-twelfth share that was intended for a daughter who predeceased Sanders without children. Nothing in the trust agreement indicates these two colleges were to receive special treatment or to be exempt from paying taxes, although such specific language, if desired by Sanders, could have been included in the trust agreement or in the will for that matter. In the absence of such language, we cannot assume this was Sanders' intention. As stated in *University of Louisville, supra,* at 290, "the testator's intent should be determined from what he says, and that the plain meaning of his words should not be discounted by reason of the court's ideas of what is fair and equitable." Stated otherwise, we must give life to what was said in the will, not what could have been said but was not. J. Merritt, 2 Ky. Prac. Prob. Prac. & Proc. § 1102 (2d ed.).

The notion of exempting the colleges from paying one-twelfth of the taxes results from a conflict of laws. The trust agreement specified the trust was governed by the laws of Pennsylvania. Fernandez was advised by a Pennsylvania attorney that charitable beneficiaries, such as the two colleges, are exempt from paying estate and inheritance taxes in that state. Based upon that advice, Fernandez did not assess any of the tax burden to the colleges. However, Sanders died a resident of Kentucky and her will was admitted to probate in a Kentucky court. Therefore, Kentucky law, not Pennsylvania law, governed administration of Sanders' estate and absent some contrary directive in her will, one-twelfth of the taxes should have been apportioned to the two colleges. As noted above, there being no "contrary intent" stated in the will, the taxes should have been paid "off the top" of the estate to ensure all beneficiaries under the trust received an equal share.

Fernandez suggests the estate was correctly administered under Pennsylvania law because the will required that all estate assets pour into the trust. However, Fernandez did not pour *all* the estate's assets into the trust before she began carrying out the directives in the will. For example, the will makes only one bequest, a gift of $10,000.00 to the First Christian Church of Shelbyville, which was paid to the church on March 15, 1999. However, distribution of the trust did not begin until October 19, 2001, more than two years later. Thus, while Fernandez argues all estate assets were to pour into the trust, clearly the gift to the church did not pour into the trust before it was paid. Furthermore, based upon the sequence of clauses in the will, which Fernandez testified she drafted, the only reasonable conclusion one may draw is that Sanders intended the taxes to be paid before any estate assets were paid to the church or poured into the trust.

It is further argued by Fernandez that the release executed by each beneficiary, allowing Wachovia to transfer its responsibilities as successor trustee to Fernandez as substitute trustee, eliminated any questionable apportionment of the taxes. We disagree. First, the taxes were paid on September 30, 1997, far in advance of the estate assets pouring into the trust and long before the trust was ready to be distributed in mid–1999. Treating the colleges differently at that point would have been wholly contrary to Sanders' directive that the trust be divided into twelve equal shares. Furthermore, the beneficiaries were not fully apprised of the consequences of signing the releases by either Fernandez or Wachovia. They were, however, told that unless everyone signed, distribution of the trust would like-

ly be delayed and additional expense would be incurred. Considering the information that was not provided to the beneficiaries, the validity of the releases, as they pertain to the actions of Fernandez, is at least suspect. In light of the foregoing, we agree with the circuit court and hold that Fernandez erred in applying Pennsylvania law and not apportioning one-twelfth of the tax burden to the two colleges.

■ The second issue we address on discretionary review is whether Fernandez charged excessive fees as executrix of the Sanders estate. Since 1942, KRS 395.150 has specified the following formula for calculating an executrix fee:

(1) The compensation of an executor, administrator or curator, for services as such, shall not exceed five percent (5%) of the value of the personal estate of the decedent, plus five percent (5%) of the income collected by the executor, administrator or curator for the estate.

(2) Upon proof submitted showing that an executor, administrator or curator has performed additional services in the administration of the decedent's estate, the court may allow to the executor, administrator or curator such additional compensation as would be fair and reasonable for the additional services rendered, if the additional services were:

(a) Unusual or extraordinary and not normally incident to the administration of a decedent's estate; or

(b) Performed in connection with real estate or with estate and inheritance taxes claimed against property that is not a part of the decedent's estate but is included in the decedent's estate for the purpose of asserting such taxes.

Fernandez did not apply the formula and admits as much. First, she based her calculation upon the gross estate which exceeded $4,000,000.00. However, the statute allows compensation to be based only upon the value of the decedent's personal estate and any income from the estate collected by the executrix. No authority has been cited to us permitting the fee to be based upon the total gross estate. Second, Fernandez applied a rate of 4.3 percent (for reasons she could not explain during her deposition) to the gross estate which allowed her to assess a fee of $175,000.00 when the maximum allowed by statute was only $87,302.00.[16] Thus, as the circuit court concluded, Fernandez received a fee well in excess of the ceiling stated in KRS 395.150(1).

Fernandez attempts to justify the large fee by saying she performed "extraordinary and unusual services" and therefore was entitled to greater compensation. Her argument is flawed. First, by her own admission, the work she performed was neither extraordinary nor unusual; she described it as "nominal" and "minimal."

Second, the statute creates a ceiling on compensation stating it "shall not exceed" an amount equal to five percent of the value of the personal estate and the income collected. Fernandez offered no proof she was entitled to the maximum rate of five percent of the personal estate and income. Furthermore, she offered no proof that five percent, if awarded, would have been inadequate pay for the work she actually performed.

■ Third, *upon a showing of proof* a court *may* authorize additional compensation that is "fair and reasonable" for ser-

---

**16.** Personalty in the estate was valued at $1,682,605.00 and income was valued at $63,437.00. According to Hale's calculations, five percent of these two amounts equals $87,302.00.

vices pertaining to realty and taxes. Here, no proof was offered to the district court regarding calculation of the fee, an itemized bill was not submitted with the billing, and private accountants handled much of the actual tax work. Fernandez did oversee some real estate transactions for Claudia Realty, Inc., a corporation for which she says she served as CEO (beginning the day after Sanders' death), and the proceeds of those sales did become part of the estate. However, our review of the record convinces us there was nothing unusual about these property sales, and again, the record shows much of the actual work was done by an auctioneer, realtors and other attorneys. If a court finds an executrix is deserving of pay for extraordinary services over and above the usual commission, it should make a specific finding to that effect. Without such a finding, the excessive fee should be disallowed. *See Panke v. Louisville Trust Co.,* 303 Ky. 579, 198 S.W.2d 313 (1946). Here, the district court's findings of fact and conclusions of law dated January 31, 2005, which we deemed void earlier in this opinion for lack of subject matter jurisdiction, stated the fees charged by Fernandez were both "fair and reasonable," without providing any factual analysis or explanation. Such a bare finding contradicts Fernandez's own testimony and, based upon the record we have reviewed, could not be said to have been supported by substantial evidence.

There are other aspects about the $175,000.00 fee that are troublesome. First, the only fee of which the district court was made aware (until Hale complained) was a charge for $7,227.76 that appeared on the sixth periodic settlement as a distribution made to "Fernandez Friedman Grossman Kohn & Son PLLC." According to Fernandez, $5,000.00 was a legal fee and the other $2,227.76 was for expenses. While this was the only amount the district court ever saw, it wasn't the only amount Fernandez and her law firm charged. Claudia Realty, Inc. was billed $110,000.00 even though Fernandez admitted she had not performed $110,000.00 worth of work for the corporation. Another $60,000.00 was billed to the Sanders trust even though Fernandez admitted she never performed any legal work for the trust.

Fernandez claims these unitemized bills were submitted to the trust and to Claudia Realty, Inc. on the advice of accountant Bobzien. Even if Bobzien gave such advice, intentionally perpetrating a scheme that conceals from the district court and from any other interested observer the true nature of the fees charged is ill-advised and professionally suspect. Submitting an inflated bill to an entity for *professional services* with knowledge that it is inaccurate runs afoul of SCR 3.130(3.3) (attorney shall not lie or conceal information from a court) and cannot be condoned. If these bills for unspecified services were designed to disguise their true nature as executrix and/or legal fees, suspension from the practice of law could be warranted under *Profumo, supra.*

Second, it is well-settled that an attorney who accepts appointment as an executrix cannot also serve as legal counsel for the estate, and receive dual compensation, absent approval of such an arrangement in the will. *Clay v. Eager,* 444 S.W.2d 124 (Ky.1969). Fernandez was named executrix in the will and appointed executrix by the district court. Nothing in the will or the trust agreement authorized Fernandez to also serve as legal counsel for the estate or the trust, or to be paid for such services. However, Fernandez apparently acted in both capacities, did not distinguish the legal services she provided from the work she performed as executrix, and did not separate her fee for legal services from her executrix fee. Moreover, she hired

her own law firm rather than outside counsel to provide additional legal services which further blurred what was really happening in this case. Professional behavior of this character could constitute misconduct under *Profumo, supra.*

Third, Fernandez argues her $175,000.00 fee was approved by the trust's advisory committee. However, she admits that body's authority was limited to matters involving the trust. Therefore, any "approval" it gave could have no legal effect.

Fourth, and finally, Sanders' sister and son passed away during administration of the estate. Since no one else stepped forward to settle those estates, Fernandez took it upon herself to do so. While admirable, we find no authority in the record for her to settle those estates at the expense of the Sanders estate. Yet, expenses and legal fees associated with settling the Hetkowski estate were in fact submitted to and paid by the Sanders estate.[17] Absent proof of an agreement between Sanders and Hetkowski permitting such an arrangement, such action was prohibited by SCR 3.130(1.8)(f).[18] The same was true for settlement of the Price estate.

In light of all these errors, we must agree with the circuit court. Fernandez breached her fiduciary duty to the estate. In the eyes of the Kentucky Supreme Court, breaching a fiduciary duty is on par with "fraud and deceit." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 487 (Ky.1991).

For the foregoing reasons we reverse the Shelby Circuit Court's opinion of June 30, 2005, in which it held it lacked subject matter jurisdiction to act and we remand the entire case to the circuit court for proceedings consistent with this opinion. Said proceedings shall include entry of an order vacating the June 30, 2005, order.

Additionally, we affirm that portion of the circuit court's January 25, 2006, opinion and order in which it concluded Fernandez charged an excessive fee and erroneously failed to apportion one-twelfth of the tax burden to the two colleges. However, we reverse that portion of the circuit court's January 25, 2006, opinion and order that remanded the entire matter to the district court and we direct the Shelby Circuit Court to enter an order vacating the remand to district court. We further direct the circuit court to exercise jurisdiction and resolve all issues before it, including but not limited to: the fee due Fernandez as executrix; the fee due Fernandez, if any, as attorney for the Sanders estate; the fee due Fernandez's law firm, if any, for legal services provided to the Sanders estate; the assessment of and financial

---

17. Fernandez stated in a letter to Marie Hale dated December 23, 2004, that she did not personally assess any fees to the Sanders estate for settling the Hetkowski and Price estates. However, the second, third and fourth periodic settlements show checks from the Sanders estate in the amount of $3,748.95 were written to the law firm of Varnum, Reddering, Schmidt for legal fees associated with the Estate of Thelma Hetkowski. Additionally, the fifth periodic settlement shows a charge of $684.00 for genealogy services pertaining to Price.

18. SCR 3.130(1.8)(f), styled "Conflict of interest; prohibited transactions" states:

A lawyer shall not accept compensation for representing a client from one other than the client unless:

(1) Such compensation is in accordance with an agreement between the client and the third party or the client consents after consultation;

(2) There is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

(3) Information relating to representation of a client is protected as required by Rule 1.6.

responsibility for payment of any damages or surcharge due the estate; the handling and distribution of damages, if any, ordered to be collected; and whether Fernandez should be removed as executrix.[19] We leave to the circuit court the question of whether Wachovia's motion to be dismissed from the proceedings should be granted. Finally, we hold the findings of fact and conclusions of law entered by the district court on January 31, 2005, are void for lack of subject matter jurisdiction. *Field, supra.*

ALL CONCUR.

---

**19.** While Hale has not requested Fernandez be removed as executrix, she has alleged Fernandez committed ethical violations which the circuit court characterized as "serious" in its January 25, 2006, opinion and order. Further, the circuit court has identified several instances in which Fernandez appears to have breached her fiduciary duty (e.g. charging an excessive fee, not disclosing material information to beneficiaries, and receiving dual compensation as both executrix and attorney without specific authorization) in handling the estate. Thus, while this particular relief has not been requested, we deem it appropriate for the circuit court to determine whether Fernandez should continue serving as executrix.