**KENTUCKY BAR ASSOCIATION, Movant,**

v.

**Pat HARRIS, Respondent.**

**No. 2008-SC-000474-KB.**

Supreme Court of Kentucky.

Nov. 26, 2008.

### OPINION AND ORDER

Pat Harris, whose bar membership number is 29480, was admitted to practice law in Kentucky in 1979. Her bar roster address is 408 Bainbridge Court, # 26, Lexington, KY 40509. She was suspended from the practice of law for nonpayment of dues in 1997, and has never been reinstat-

ed. She is before us today appealing a public reprimand for a finding by the Board of Governors that she violated SCR 3.130–8.3(c) (Kentucky Rules of Professional Conduct prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation) by presenting false time records to her former employer.

Pat Harris used to work as an attorney for the Division of Law & Regulatory Compliance in the Department of Financial Institutions, Public Protection Cabinet, of the Commonwealth. On August 5, 1995, she was terminated for falsifying her time records on twenty-one different days, involving twenty-nine hours that she did not work, for which she claimed pay.

Harris appealed her dismissal to the Personnel Board which, through a hearing officer, held a hearing which resulted in a sixty-three page "Findings of Fact, Conclusions of Law and Recommended Order," dated March 7, 1997, which recommended termination for the submission of false time sheets. The Personnel Board accepted the recommended order of termination and dismissed Harris's appeal. Harris appealed to the Franklin Circuit Court on May 14, 1997. The case was dismissed on August 25, 2004, for lack of prosecution.

Meanwhile, on June 9, 1999, the Inquiry Commission charged Harris with violation of SCR 3.130–8.3(c) for presenting false time sheets to her employer. The matter was put on hold pending a decision by the Franklin Circuit Court. The file was activated after the Franklin Circuit Court's dismissal was final and on June 15, 2005, Harris filed a response to the Inquiry Commission's charge. As a result of Harris's response, a Trial Commissioner was appointed to hear the case. After conduct-

ing said hearing, the Trial Commissioner filed her nineteen page report on November 30, 2007 (amended 12–21–07). The report concluded Harris had made false time entries over a six week period which amounted to twenty-nine hours of pay for work not performed. The Trial Commissioner recommended a disciplinary suspension from the practice of law for sixty days and requiring Harris to attend fifteen hours of legal education in ethics. Harris requested a hearing before the Board of Governors, which heard her case de novo on May 16, 2008, and filed its Findings, etc. on June 27, 2008. By a vote of 11–3, the Board of Governors determined that Ms. Harris was guilty of violating SCR 3.130–8.3(c) by presenting false time records to her former employer. By a vote of 14–0, the Board determined that a public reprimand was the appropriate penalty. Undaunted, Harris filed her appeal to this Court (Notice of Review and In Forma Pauperis).

Harris's arguments can be divided into two categories: those that deal with due process—issues that affect the impartiality of the proceedings; and those that deal with the presentation and evaluation of the evidence which was relied upon to find Harris had acted unethically and should be disciplined.[1] The first group of arguments questions the impartiality and connections between the Office of Bar Counsel, the Inquiry Commission, the Trial Commissioners, the Board of Governors, and the Office of Disciplinary Clerk. To understand the interaction between and among the different entities, it will be helpful to explain the functions of each in the scheme of attorney discipline.

---

**1.** Harris filed a fifty page pro se brief with some eighteen arguments and subarguments. The print is small and the arguments overlap.

Nevertheless, this Court will attempt to address all of Harris's concerns.

When a complaint of professional misconduct comes to the Kentucky Bar Association, the gears of the disciplinary proceedings are set in motion. The Office of Bar Counsel [2] reviews the complaint, has it reduced to a sworn written statement (SCR 3.160) and files it with the Disciplinary Clerk.[3] The Disciplinary Clerk (or deputy) notifies the attorney by certified mail, etc. of the complaint and of his or her response time. SCR 3.160. Bar Counsel investigates the complaint and presents the case to the Inquiry Commission. SCR 3.170. The Inquiry Commission consists of nine persons (six attorneys, and three non-attorneys) appointed by the Chief Justice with consent of the Court. The Inquiry Commission meets in panels of three, with two attorneys and one non-attorney on each panel. SCR 3.140. The Inquiry Commission reviews the investigative evidence from Bar Counsel and any response from the accused attorney (Respondent) and determines whether the complaint should be dismissed or a charge be filed. SCR 3.170. If the Inquiry Commission determines "that probable cause exists for a charge to be filed," it drafts the formal charges which are filed with the Disciplinary Clerk. SCR 3.190. The Disciplinary Clerk appoints the next available Trial Commissioner to serve as a hearing officer. SCR 3.230. Trial Commissioners are also appointed by the Chief Justice, subject to approval of the Supreme Court. SCR 3.225. The Trial Commissioner sets the matter for a hearing. All charges, pleadings, motions, notices, briefs, orders, etc. shall be filed with the Disciplinary Clerk. SCR 3.290. After a hearing, with

evidence, briefs, and oral argument, the Trial Commissioner must decide the case by "a preponderance of the evidence." SCR 3.330. Upon submission of the case, the Trial Commissioner files a written report with the Disciplinary Clerk. SCR 3.360. The written report sets forth the findings of fact, conclusions of law, whether or not a violation occurred, and if so, the proposed sanction. *Id.* Either party may file a timely "Notice of Appeal" with the Disciplinary Clerk (SCR 3.365) which transfers jurisdiction to the Board of Governors.[4] The Board may review the record or grant a de novo hearing. SCR 3.370. The Board's decision may be appealed to the Supreme Court by either party. SCR 3.370(8). Notices, pleadings, briefs, etc. before the Board are all filed with the Disciplinary Clerk and upon filing of the "Notice of Review" of the Board's decision, the record is transferred to the Supreme Court Clerk. After the parties file briefs, the case is considered submitted to the Supreme Court for a decision. SCR 3.370.

■ We will first address Pat Harris's arguments that the impartiality of the proceedings is compromised by the interaction of the Disciplinary Clerk and Bar Counsel with the Inquiry Commission, Trial Commissioners, and the Board of Governors. A closer inspection of the functions described above reveals that the Disciplinary Clerk is merely an administrator, much like the District/Circuit Court Clerks that receive papers, serve notices by mail, and appoint warning order attorneys, etc. when needed. The Clerks, as an administrative

---

2. The Board of Governors appoints Bar Counsel and deputies to investigate and prosecute all disciplinary cases. SCR 3.155.

3. The Board of Governors appoints the Disciplinary Clerk who is an administrator or clerk responsible for accepting filings, pleadings,

etc. issuing process and maintenance of disciplinary records and proceedings. SCR 3.157.

4. Which for purposes of disciplinary proceedings, includes four non-lawyers appointed by the Chief Justice (SCR 3.370(4) and SCR 3.375) with the approval of the Court.

arm working with the attorneys, parties, witnesses, and judges, in no way affect the impartiality of the decision maker.

Likewise, the Inquiry Tribunal is similar to the Grand Jury, which reviews evidence presented by the Commonwealth Attorney's Office to see if the matter should be dismissed or a charge (indictment) filed. If a charge or indictment is returned, it is filed with the District/Circuit Court Clerk and the accused is then notified by summons or arrest. Before a Grand Jury considers an indictment, much ex parte contact occurs and is proper.

If an indictment is returned, an accused, the defendant, is entitled to an impartial judge who is selected by the Clerk according to some predetermined method (just as a Trial Commissioner is selected by the Disciplinary Clerk). The judge deciding the case is not rendered impartial because the Clerk has prior contact with the Commonwealth Attorney, or the Grand Jury. The judge receives the charging document from the Clerk (like the Trial Commissioner receives the charging document from the Disciplinary Clerk). At this point, the prosecutor has no ex parte contact with the judge (at this point Bar Counsel has no ex parte contact with the Trial Commissioner). The prosecutor then communicates with the court through its filings in the Clerk's office (Bar Counsel then communicates with the Trial Commissioner through its filings in the Disciplinary Clerk's office). Likewise, a defendant does not have ex parte communications with the judge, but must communicate through filings with the Clerk's office (and a respondent must communicate with the Trial Commissioner through filings with the Disciplinary Clerk's office).

Appeals to the Courts (and to the Board of Governors) operate the same way. A Notice of Appeal is filed ex parte with the Clerk, not the judge (a Notice of Appeal is filed with the Disciplinary Clerk not the Trial Commissioner). Clerks notify the appellate body, the other parties, and transfer the record to the appellate body. The ex parte communication between the Clerks and the appellate body relate to administrative matters and are not communications on the merits of the case.

The Clerk's office is the one constant that keeps the wheels of justice moving and is the best insulation against ex parte contacts between parties and the judges that we have devised (much like the Disciplinary Clerk's office insulates between the parties and Trial Commissioners and Board of Governors). Our system, as it currently exists does not deprive Pat Harris of due process.

The second group of arguments deals with the presentation and evaluation of the evidence against Pat Harris. The main objection of Harris was that the Office of Bar Counsel presented the Personnel Board's findings of fact, in lieu of retrying or re-presenting the evidence. We see no error. Decisions of administrative agencies acting in a judicial capacity are entitled to the same res judicata effect as judgments of a court. *Godbey v. University Hospital of the Albert B. Chandler Medical Center, Inc.,* 975 S.W.2d 104, 105 (Ky. App.1998). In disciplinary proceedings, a judgment of a court is considered conclusive proof that the alleged conduct occurred. *Kentucky Bar Association v. Horn,* 4 S.W.3d 135, 137 (Ky.1999).

Applying this rationale to Harris's case, we have no problem with the Inquiry Commission, the Trial Commissioner, or the Board of Governors accepting the Personnel Board's finding of fact that Harris presented false time records to her former employer. Nor do we find any error in the Board of Governor's conclusions that such conduct violated SCR 3.130–8.3(c)

which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation.

In agreeing with the Board of Governors that Harris violated SCR 3.130–8.3(c), we must review the sanctions imposed by the Board. After an extensive de novo hearing before the Board, Harris was to be given a public reprimand. We opine that a public reprimand is appropriate. If Harris was not already under suspension, a much more severe punishment would be appropriate.

THEREFORE, IT IS HEREBY ORDERED that Pat Harris be and is hereby issued a Public Reprimand for violation of SCR 3.130–8.3(c).

All sitting. All concur.

ENTERED: November 26, 2008.

/s/ John D. Minton, Jr.
Chief Justice