**KENTUCKY BAR ASSOCIATION,**
Movant

v.

**Maria A. FERNANDEZ, Respondent.**

**No. 2012–SC–000471–KB.**

Supreme Court of Kentucky.

April 25, 2013.

### OPINION AND ORDER

Pursuant to SCR 3.370(7),[1] the Office of Bar Counsel of the Kentucky Bar Association (Bar Counsel) seeks review of the Findings of Fact, Conclusions of Law, and Recommendations of the Board of Governors of the Kentucky Bar Association (Board) entered June 5, 2012, in this disciplinary proceeding involving alleged ethical violations by Respondent, Maria A. Fernandez, KBA Member No. 83340. Respondent was admitted to the practice of law in Kentucky in 1990, and her bar roster address is 401 West Main Street, Suite 1807, Louisville, Kentucky 40202.

This proceeding involves seven counts of alleged misconduct by Respondent. Of the seven charges of misconduct, the Trial

Commissioner found Respondent guilty of four: charging an unreasonable fee in violation of SCR 3.130–1.5(a); accepting compensation from a person other than client in violation of SCR 3.130–1.8(f); failure to disclose a material fact to a tribunal in violation of SCR 3.130–3.3(a)(2); and dishonesty, fraud, deceit and misrepresentation under SCR 3.130–8.3(c). The Trial Commissioner recommended suspension from the practice of law for ninety-one days, with sixty-one days probated for one year on the condition that Respondent complete the KBA's Ethics and Professional Enhancement Program (EPEP). In contrast, the Board found her not guilty of five charges, but guilty of violating SCR 3.130–1.5(a)[2] (charging an unreasonable fee) and SCR 3.130–8.3(c) (dishonesty, fraud, deceit, and misrepresentation). The Board recommended that Respondent receive a public reprimand and be required to attend and successfully complete EPEP. Bar Counsel argues that this Court should find that Respondent is guilty of all seven counts, should be publicly reprimanded, and suspended for ninety-one days, with thirty days probated for a year pending completion of EPEP.

Based upon our review of the record, the arguments of the parties, and the litany of charges brought against Respondent for her representation of the Sanders Estate, we find for the reasons discussed below that Respondent is guilty of five ethical violations: SCR 3.130–1.2 (acting upon a matter without the client's authority), SCR 3.130–1.5(a) (charging an unreasonable fee), SCR 3.130–1.8(f) (accepting compensation from someone other than a client), SCR 3.130–3.3(a)(2) (failure to disclose a

---

1. SCR 3.370(7) provides that "[w]ithin thirty (30) days after the Board's decision is filed with the Disciplinary Clerk, Bar Counsel or the Respondent may file with the Court a Notice for the Court to review the Board's decision stating reasons for review[.]"

2. All references to the Model Code of Professional Conduct refer to the version and Supreme Court Rule number in effect at the time the alleged violations occurred.

material fact to a tribunal), and SCR 3.130–8.3(c) (dishonesty, fraud, deceit, and misrepresentation).

## I. CHARGES

As a result of Respondent's representation of the Estate of Claudia Sanders, the KBA Inquiry Commission charged her with seven counts of professional misconduct as follows:

**Count I**—violating SCR 3.130–1.1, which provides, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The Commission alleged that Respondent violated this rule by serving as both executrix and attorney for the Sanders Estate, by applying Pennsylvania law to the distribution of the Sanders Trust, by calculating her executrix's fee contrary to KRS 395.150(1), and by collecting legal fees and expenses, without specific authority, from the Sanders Estate for the administration of the estates of Thelma Hetkowski and Elvis Price.

**Count II**—violating SCR 3.130–1.2, which provides, "A lawyer shall abide by a client's decisions concerning the objectives of representation, ... and shall consult with the client as to the means by which they are to be pursued." The Commission alleged that Respondent violated this rule by representing the Hetkowski and Price estates and billing the Sanders Estate, without specific authority, for the fees and expenses relating to those estates.

**Count III**—violating SCR 3.130–1.4(b), which provides, "A lawyer should explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The Commission alleged that Respondent failed to properly inform the beneficiaries, before they signed a release that gave her the authority to serve as the trustee for the Sanders Trust, of the tax consequences of applying Pennsylvania law to the distribution of the Trust.

**Count IV**—violating SCR 3.130–1.5(a), which provides, "A lawyer's fee shall be reasonable." The Commission alleged that Respondent violated this rule by taking from the Sanders Estate an executrix fee of $175,000.000, when KRS 395.150(1) provided for a maximum fee of $87,302.00. Further, Respondent violated this rule by charging $4,432.95 in legal fees and expenses relating to the Hetkowski and Price estates without any authority from the Sanders will or from the probate court.

**Count V**—violating 3.130–1.8(f), which provides, "A lawyer shall not accept compensation for representing a client from one other than the client unless: (1) Such compensation is in accordance with an agreement between the client and the third party or the client consents after consultation[.]" The Commission alleged that Respondent violated this rule by collecting, from the Sanders Estate, legal fees and expenses for serving as the representative of the Hetkowski and Price estates without being given authority to do so in an agreement between the client and the third party or any such direction by the client.

**Count VI**—violating SCR 3.130–3.3(a)(2), which provides, "A lawyer shall not knowingly: ... (2) Fail to disclose a material fact to the tribunal when disclosure is necessary to avoid a fraud being perpetrated upon the tribunal[.]" The Commission alleged that Respondent violated this rule by not disclosing her actual legal fees of $175,000.00 in the periodic settlements she filed with the Shelby District Court while serving as Executrix for the Sanders Estate, and instead listed her legal fees as $5,000.00.

Count VII—violating SCR 3.130–8.3(c), which provides, "It is professional misconduct for a lawyer to: ... (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The Commission alleged that Respondent violated this rule by claiming only $5,000.00 in legal fees to the Shelby District Court while reporting $175,000.00 in legal fees on federal and state tax filings for the Sanders Estate, and by collecting legal fees and expenses for handling the Hetkowski and Price estates without first receiving authority from the Sanders will or the probate court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Respondent prepared a will for Claudia Sanders in 1993. Respondent filed the will for probate in the Shelby District Court and was appointed Executrix of the Estate in 1997. The will contained initial routine provisions regarding the payment of taxes and debts, and gave Mrs. Sanders's church a sizable donation. The remaining assets were then to go into the Sanders Trust and be divided between twelve equal beneficiaries. The Trust provided that it was to be "construed and governed in all respects in accordance with the laws of the State of Pennsylvania."

During administration of the Estate, Mrs. Sanders's sister, Thelma Hetkowski, and son, Elvis Price, died intestate. Hetkowski and Price were beneficiaries under the Sanders Trust. Respondent petitioned and was appointed as administrator of both of these estates. Nothing in the Sanders will authorized Respondent to use assets of the Sanders Estate to pay fees or expenses for the administration of the Hetkowski and Price estates; however, Respondent charged the Sanders Estate $4,432.95 for such fees and expenses.

In 1999, the bank serving as trustee for the Sanders Trust proposed releasing the trust funds to Respondent, as substitute trustee, and sent a release to all the beneficiaries. Respondent did not provide the beneficiaries any advice about the release, nor did she explain to them that applying Pennsylvania law to the trust distribution would exempt two beneficiary colleges from paying any taxes on their combined one-twelfth share of the trust. This resulted in the other beneficiaries paying an additional $98,000.00 in taxes. If the trust had applied Kentucky law, all beneficiaries would have shared the tax liability equally.

Respondent charged the Sanders Estate a fee of $175,000.00 for her service as executrix and attorney. However, in settlement statements filed with Shelby District Court, she listed her legal fee as $5,000.00.[3] The remaining $170,000.00 was charged to Claudia Realty in the amount of $110,000.00 and the Sanders Trust in the amount of $60,000.00. Respondent claimed the charges were for professional services; however, she had not performed any legal work for the Sanders Trust and performed only a diminutive amount of legal work for Claudia Realty. Under KRS 395.150(1) the maximum fee she could collect as executrix was $87,302.00. The will did not authorize an additional fee, and Respondent never sought or obtained approval from the Shelby District Court for the additional fees.

Five of the Sanders heirs filed suit against Respondent, and the case eventually resulted in the Court of Appeals opinion *Hale v. Moore*, 289 S.W.3d 567 (Ky.App. 2008). The Court of Appeals concluded therein that Respondent had breached her fiduciary duty to the Estate in several regards. The Court of Appeals found that Respondent improperly served as executrix and attorney for the Estate and that

---

3. She reported the full $175,000.00 fee on the Estate's federal and state tax filings.

her fees of $175,000.00 were excessive. The court also determined that Respondent improperly based her fee on a percentage of the gross estate of the decedent, instead of the personal estate as is required by statute. The court further concluded that Respondent improperly billed the Sanders Estate fees and expenses for the handling of the Hetkowski and Price estates and improperly applied Pennsylvania's trust distribution law.

The KBA Inquiry Commission charged Respondent with seven counts of ethical misconduct. Trial Commissioner conducted a hearing and issued a final report on December 15, 2011, finding Respondent guilty of four of the seven counts: SCR 3.130–1.5(a) (charging an unreasonable fee); SCR 3.130–1.8(f) (accepting compensation from a person other than client); SCR 3.130–3.3(a)(2) (failure to disclose material fact to tribunal); and SCR 3.130–8.3(c) (dishonesty, fraud, deceit, and misrepresentation). As noted above, the Trial Commissioner recommended that Respondent be suspended from the practice of law for ninety-one days, with sixty-one days probated for one year on the condition she complete EPEP.

The Board voted sixteen to zero to consider this disciplinary matter *de novo* rather than accepting the Trial Commissioner's Report in accordance with SCR 3.370(5)(a)(i).[4] Following its review, the Board found that Respondent's conduct violated SCR 3.130–1.5(a) by charging an unreasonable fee and SCR 3.130–8.3(c) for misconduct involving dishonesty, fraud, deceit or misrepresentation in connection with excessive fees and funds paid to her-

self (or her firm) from the estate. The Board recommended that Respondent receive a public reprimand and that she complete EPEP. Bar Counsel now seeks review and urges that we reject the Board's decision, adjudge Respondent guilty of each of the seven charges of alleged ethical misconduct, and requests suspension for ninety-one days with thirty days probated for one year pending completion of EPEP.

### III. ASSESSMENT OF GUILT

We begin by noting that the Findings of Fact by the Trial Commissioner and the Board are advisory only. SCR 3.360; SCR 3.370(7). We accordingly undertake an independent review of the record and findings of fact. *Kentucky Bar Assoc. v. Berry*, 626 S.W.2d 632, 633 (Ky. 1981). Moreover, upon a finding of guilt, it is our task to establish the appropriate sanction. *Kentucky Bar Ass'n v. Steiner*, 157 S.W.3d 209, 211 (Ky.2005); SCR 3.380.

In response to the charges against her, Respondent contends that the Trial Commissioner improperly applied the doctrine of collateral estoppel based on the Court of Appeals decision in *Hale v. Moore*, and excluded evidence that would support the imposition of a private reprimand rather than a public reprimand. She asserts that collateral estoppel should not be applied because in the other action she was unable to present evidence[5] that would negate the claims that her executrix fee was excessive, that she breached her duties to the Sanders Estate, and that the Trust beneficiaries were improperly taxed under Penn-

---

4. SCR 3.370(5)(a)(i) permits the Board, after deliberation, and consideration of oral arguments, if any, to decide by a roll call vote "[t]o accept the Trial Commissioner's Report as to the guilt, innocence, and the discipline imposed, by concluding that the Trial Com-

missioner's report is supported by substantial evidence and is not clearly erroneous as a matter of law[.]"

5. These exhibits and testimony were preserved by Respondent by avowal.

sylvania's distribution law.[6]

■ We have previously determined that *res judicata* may apply in bar disciplinary proceedings. *See Kentucky Bar Ass'n v. Harris*, 269 S.W.3d 414 (Ky.2008); *Kentucky Bar Ass'n v. Horn*, 4 S.W.3d 135, 137 (Ky.1999); and *Kentucky Bar Ass'n v. Schilling*, 361 S.W.3d 304 (Ky. 2012). However, before collateral estoppel can be applied in a disciplinary proceeding, it must be determined that (1) at least one party to be bound in the second case was a party in the first case; (2) the issue in the second case is the same as the issue in the first case; (3) the issue was actually litigated in the first case; (4) the issue was actually decided in the first case; and (5) the decision on the issue in the first case was necessary to the court's judgment and adverse to the party to be bound. *Miller v. Administrative Office of Courts*, 361 S.W.3d 867, 872 (Ky.2011) (quoting *Yeoman v. Commonwealth*, 983 S.W.2d 459 (Ky.1998)); *see also Schilling*, 361 S.W.3d at 311.

■ In *Hale v. Moore*, the Court of Appeals addressed "whether two colleges should have been exempt from paying one-twelfth of the estate taxes" and "whether Fernandez paid herself an excessive fee." 289 S.W.3d at 580. The Court of Appeals determined that all of the Trust beneficiaries should have shared the tax burden equally and Respondent's fee was excessive. Based on our review of that decision, we conclude that collateral estoppel precludes our reconsideration, of whether Respondent erred in applying Pennsylvania law to the distribution of the trust, whether Respondent's fee of $175,000.00 was excessive,[7] and whether Respondent breached her duties to the Sanders Estate. We conclude that these issues were actually litigated and decided by the Court of Appeals and their resolution was necessary to the Court of Appeals' judgment.

Respondent additionally alleges that collateral estoppel cannot be properly applied in this case because no final judgment was ever entered in the earlier litigation. Respondent notes that the Court of Appeals remanded the case to the circuit court, but the circuit court never entered a judgment because the parties settled the dispute. We do not doubt her premise but we disagree with her conclusion. While the Court of Appeals remanded the case for the circuit to resolve several issues, the issues relating to this action were finally determined by the Court of Appeals and no further consideration by the circuit court was necessary. The essential questions now before us were, indeed, resolved

---

**6.** This evidence includes the expert testimony of James Worthington. Mr. Worthington has his LLM in taxation and is specialized in estate planning, probate, and tax matters. Among the topics Respondent states Worthington was to testify about were: 1.) The significance of the Court of Appeals decision to the estate planning and probate practice; 2.) The reasonable belief of competent lawyers before the Court of Appeals decision regarding the use of Pennsylvania's distribution law; 3.) Respondent's representation of the Hetkowski and Price estates conformed to the standard of care of a reasonable attorney; 4.) Respondent's performance as trustee of the Sanders Trust; 5.) The reasonableness of the $175,000.00 fixed fee; 6.) That the fee of a trustee is not governed by KRS 395.150; and 7.) The District Court's jurisdiction for estate matters verses trust matters.

**7.** It is important to clarify that a determination that a fee is excessive in a civil suit is not the same as a determination that a fee is unreasonable under SCR 3.130–1.5(a). For example, a fee may be excessive in a civil suit because it is more than agreed upon in a contract, if there were no agreed to amendments, but that same fee may not be unreasonable in a disciplinary proceeding once viewed in light of the factors listed under SCR 3.130–1.5(a), as well as any other relevant factor.

by the Court of Appeals in the prior action.

Upon our application of collateral estoppel to those issues and upon our review of the record, we find that Respondent violated five of the seven counts charged by the Commission. Each count will be discussed in detail below.

■ **Count I.** In reviewing the record, we find that Respondent did not violate SCR 3.130–1.1. Bar Counsel contends that Respondent violated this rule by serving as the executrix and attorney for the Estate and being compensated for serving in both capacities; by failing to consult a Kentucky attorney before applying Pennsylvania law to the distribution of the Sanders Trust; by collecting a fee in excess of the statutory maximum provided in KRS 395.150(1); and by collecting fees from the Sanders Estate for the representation of the Hetkowski and Price estates.

SCR 3.130–1.1 states an attorney must provide "competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." To clarify the amount of requisite knowledge that is required for an attorney to be adjudged competent, the commentary to SCR 3.130–1.1, before the 2009 amendment, stated:

> relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question. In many instances, the required proficiency is that of a general practitioner. Expertise in a particular field of law may be required in some circumstances.

The commentary further provides that "[c]ompetent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation."

The record establishes that Respondent has been practicing in estate planning, probate, estate administration, and corporate law since she began practicing law in 1990. During this time, Respondent has not been the subject of a disciplinary sanction. Based on her history with probate and estate matters we find that she possessed the requisite knowledge to handle the administration of the Sanders Estate.

Further, we disagree with Bar Counsel's contention that Respondent failed to properly consult with other attorneys about the proper handling of this case. Based on Respondent's background in probate matters, she was qualified to handle the Sanders Estate. Moreover, Respondent sought the advice of other professionals during her dealings with the Sanders Estate. These professionals included the advisory committee of the Sanders Trust and Sanders's accountant. Respondent's actions in seeking advice from other professionals regarding the taxation of the beneficiaries and the distribution of the trust, along with her knowledge as a specialized practicing attorney made her competent to handle this case. While Respondent did take some missteps that constitute ethical violations, as discussed below, we cannot say that she was not competent, knowledgeable, and able to serve as the executrix of the Sanders Estate. Therefore, we agree with the Board that Respondent did not violate SCR 3.130–1.1.

■ **Count II.** Our review of the record demonstrates that Respondent violated

SCr 3.130–1.2, by charging the Sanders Estate fees and expenses for the administration of the Hetkowski and Price estates. Bar Counsel contends that nothing in the Sanders Estate authorized Respondent to represent the Hetkowski and Price estates or provided for the payment of fees and expenses relating to those estates. Respondent argues that she did not violate this rule because she was asked by the trustee of the Sanders Trust to represent these estates because they were beneficiaries of the Trust, and representation was needed to ensure the proper distribution of the shares of the Trust. Respondent further states that the Sanders Estate was not charged for the representation of these two estates but only provided the upfront costs, which were later reimbursed to the Estate. In presenting her argument, Respondent emphasizes that her proffered expert testimony, excluded by the Trial Commissioner, establishes that her actions in representing these estates were "appropriate and reasonable."

SCR 3.130–1.2 states that "a lawyer shall abide by a client's decisions concerning the objectives of representation, ... and shall consult with the client as to the means by which they are to be pursued." The commentary to SCR 3.130–1.2, prior to the 2009 amendments, provided some guidance in determining when a client must be consulted:

> Both lawyer and client have authority and responsibility in the objectives and means of representation. The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. Within those limits, a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives. At the same time, a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so. A clear distinction between objectives and means sometimes cannot be drawn, and in many cases the client-lawyer relationship partakes of a joint undertaking. *In questions of means, the lawyer should assume responsibility for technical and legal tactical issues, but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected.*

(emphasis added).

Respondent's actions in representing the Hetkowski and Price estates are arguably in line with the objectives of the Sanders Estate. The Sanders will provided that left over assets after the will's provisions were executed should be rolled into the Sanders Trust and distributed in accordance with the Trust. Due to the deaths of the two beneficiaries, Hetkowski and Price, the trust assets would not be completely distributed until the estates were properly probated. Therefore, Respondent's actions can be construed as being aligned with the objectives of her client. However, as stated by the commentary, issues regarding expense should be left to the client. Nothing in the Sanders' will authorized Respondent to charge the Estate for the expense of probating the Hetkowski and Price estates.[8] Thus, Respondent violated SCR 3.130–1.2 by charging the Estate for expenses that were not authorized by her client.

 **Count III.** A review of the record establishes to our satisfaction that Respon-

---

8. We are not swayed by Respondent's argument that the former trustee of the Sanders Trust asked her to represent the Hetkowski and Price estates because the Trust was not her client.

dent did not violate SCR 3.130–1.4(b), by failing to advise the beneficiaries of the Trust, before they signed a release transferring the power of Trustee to Respondent, that the distribution of the Trust would be governed by Pennsylvania law. SCR 3.130–1.4(b) states, "[a] lawyer should explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

The implication of distributing the Trust assets in accordance with Pennsylvania law was that two beneficiary colleges, that together would receive a one-twelfth share of the trust, were exempt from the tax burden. Applying Pennsylvania law, the entire burden of the estate tax had to be paid out of the remainder of the Estate that was then divided among the non-exempt beneficiaries, reducing their share of the estate by $98,000.00. Applying Kentucky law, apparently, would have avoided that result. Respondent argues that she did not violate SCR 3.130–1.4(b) because the beneficiaries were not her clients. Bar Counsel responds by noting that in the civil suit, *Hale v. Moore,* Respondent acknowledged that she had represented both the Estate and the beneficiaries.

It is our view that Respondent did not have an attorney-client relationship with the beneficiaries, and therefore she did not owe the beneficiaries the same duties she owed to a client. *See* Kentucky Bar Ass'n, Ethics Op. KBA E–401 (1997) ("In representing a fiduciary the lawyer's client relationship is with the fiduciary and not with the trust or estate, nor with the beneficiaries of a trust or estate. [ ] The fact that a fiduciary has obligations to the beneficiaries of the trust or estate does not in itself either expand or limit the lawyer's obligations to the fiduciary under the Rules of Professional Conduct, nor impose on the lawyer obligations toward the beneficiaries

that the lawyer would not have toward other third parties.").

The Sanders will provided that creditors, funeral expenses, state and federal taxes, and a donation to Ms. Sanders's church were to be paid first. The remainder of the Estate then rolled into the Sanders Trust, for which distribution had already been allocated. Respondent's earlier statement that the beneficiaries were her clients, does not create a lawyer-client relationship that did not otherwise exist. Her misconception on that point did not impose a duty that set her up for a violation, as if her misconception was true. The violation of this rule must be based upon an actual attorney-client relationship, not the attorney's misconception, or misstatement. We conclude that Respondent did not violate SCR 3.130–1.4(b).

■ **Count IV.** We find from the record that Respondent violated SCR 3.130–1.5(a) by collecting excessive fees from the Estate in violation of KRS 395.150(1). SCR 3.130–1.5(a) states, "[a] lawyer's fee shall be reasonable[,]" and KRS 395.150 provides:

(1) The compensation of an executor, administrator or curator, for services as such, shall not exceed five percent (5%) of the value of the personal estate of the decedent, plus five percent (5%) of the income collected by the executor, administrator or curator for the estate. (2) Upon proof submitted showing that an executor, administrator or curator has performed additional services in the administration of the decedent's estate, the court may allow to the executor, administrator or curator such additional compensation as would be fair and reasonable for the additional services rendered, if the additional services were: (a) Unusual or extraordinary and not normally incident to the administration of a decedent's estate; or (b) Performed in con-

nection with real estate or with estate and inheritance taxes claimed against property that is not a part of the decedent's estate but is included in the decedent's estate for the purpose of asserting such taxes.

In accordance with the statute, Respondent was entitled to fees in the amount of $87,302.00, based on a personal estate value of $1,682,605.00 and income amounting to $63,437.00, as found by the probate court. However, Respondent collected fees amounting to $175,000.00, which is more than twice the amount statutorily allowed. Additionally, Respondent collected $4,432.95 in fees and expenses from the Sanders Estate for the representation of the Hetkowski and Price estates. The will contained no specific provision that provided for the excessive fee, nor did Respondent seek court approval for the payment of additional fees.

Respondent asserts that the fee was determined after the original trustee of the Sanders Trust stated he intended to transfer the trust to Respondent to serve as trustee. Acting as trustee, Respondent contends, required her to perform more services than she was required to perform as executrix of the Estate. Furthermore, Respondent argues that the fees collected for the representation of the Hetkowski and Price estates were reimbursed to the Sanders Estate from the distribution of the Trust to the Hetkowski and Price estates.

While the Court of Appeals, in *Hale v. Moore,* already properly determined that Respondent's fees were excessive under the applicable statutes, we conclude that the fees were unreasonable under SCR 3.130–1.5(a). KRS 395.150(2) enables an attorney to seek consent of the court for compensation beyond the statutory limit. The attorney must first request that the court make such a finding and submit proof justifying that finding. Having failed to follow the statutory process, Respondent cannot contend that the additional fees were proper based on a good faith belief and additional services rendered. *See Kentucky Bar Ass'n v. Profumo,* 931 S.W.2d 149, 152 (Ky.1996) (holding that Respondent cannot unilaterally decide to pay himself but must "follow clearly defined procedures both for requesting and proving he was entitled to the additional compensation."). Accordingly, "Respondent cannot rely on this exception [to KRS 395.150(1)] since [she] neither asked the probate court to allow additional compensation nor presented evidence to the probate court justifying the fee." *Id.* at 150.

Finally, the reimbursement of the additional fees collected for the representation of the Hetkowski and Price estates was only rendered after receiving complaints from the heirs, and does not negate a finding of misconduct. *See id.* at 152 ("The fact the Respondent has reimbursed the estate in full for the excessive charges does not mitigate his illegal collection of the money in the first place, when he did so only after judgment was entered against him."). Thus, to the extent that Respondent collected fees in excess of the 5% ceiling provided for in KRS 395.150(1), the fees were unreasonable and therefore we find that Respondent violated SCR 3.130–1.5(a).

■ **Count V.** The facts set forth in the record establish that Respondent violated SCR 3.130–1.8(f), which states "A lawyer shall not accept compensation for representing a client from one other than the client unless: (1) Such compensation is in accordance with an agreement between the client and the third party or the client consents after consultation[.]"

Respondent contends that she did not receive any compensation for her services

in representing the Hetkowski and Price estates and that the Sanders Estate was not charged an additional fee for those estates. Instead, the costs that were advanced from the Sanders Estate, and fully reimbursed by the Hetkowski and Price estates, were for local counsel and a genealogy search firm.

Nevertheless, the undisputed evidence shows that Respondent obtained appointment to represent the Hetkowski and Price estates. The Sanders Estate was charged $4,432.95 in fees and expenses for work conducted on behalf of those estates and there was no apparent authority or justification for doing so. Upon those facts, the Trial Commissioner found that "Respondent improperly billed the Sanders Estate fees and expenses for handling Thelma Hetowski and Elvis Price estates." We agree with the Trial Commissioner. Thus, we find Respondent is guilty of violating SCR 3.130–1.8(f).

 **Count VI.** A review of the record establishes that Respondent violated SCR 3.130–3.3(a)(2), which states "A lawyer shall not knowingly: . . . (2) Fail to disclose a material fact to the tribunal when disclosure is necessary to avoid a fraud being perpetrated upon the tribunal[.]"

Respondent filed periodic settlements with the Shelby District Court, in which she listed her legal fees for services rendered in representing the Estate as $5,000.00. However, Respondent stated in the estate tax returns that the fees totaled $175,000.00. Respondent collected the remaining $170,000.00 from the Estate by billing Claudia Realty $110,000.00 and the Sanders Trust $60,000.00. Respondent performed nominal services for Claudia

Realty but did not perform any legal services for the Trust.

Respondent argues that she was not conducting fraudulent activity by failing to disclose the fees to the court but instead was trying to create a tax advantage for the Estate based on advice she received. She further contends that the expert testimony she presented established that she acted in good faith and she asserts that Bar Counsel has failed to account for the additional duties she undertook as trustee for the Sanders Trust. Additionally, she argues that while the probate court has jurisdiction regarding a will that same jurisdiction does not apply to a trust.

Respondent concedes that $170,000.00 was not included on the filings submitted to Shelby District Court and that she only claimed $5,000.00 in legal fees to the court. Respondent's submission to the probate court that she only received $5,000.00 in legal fees was false and her actions concealed the total amount of fees collected, $175,000.00, which as stated above is far beyond the 5% ceiling provided for in KRS 395.150(1). Thus, Respondent filed a false report to the probate court by claiming only $5,000.00 in legal fees when she knew that she had collected a far greater amount.[9] Her actions in concealing the $175,000.00 fee was misleading to the probate court and violates SCR 3.130–3.3(a)(2). Accordingly, we conclude that Respondent is guilty of violating SCR 3.130–3.3(a)(2).

 **Count VII.** Finally, after review of the record we determine that Respondent violated SCR 3.130–8.3(c), which provides that an attorney commits professional misconduct when she engages "in conduct involving dishonesty, fraud, deceit

9. If Respondent truly believed that she was entitled to additional compensation for the services she rendered for the Sanders Trust her proper avenue for receiving such compensation was to petition the court, as stated above. Instead, Respondent hid the additional compensation from the probate court.

or misrepresentation." Respondent contends that her actions in the handling of the Sanders Estate did not rise to the serious misconduct of "dishonesty, fraud, deceit or misrepresentation." She states that these allegations require the submission of "serious proof," which is not established in the record. Respondent urges that this Court should not rely solely upon the Court of Appeals' decision for proof of her alleged misconduct.

We find that the record establishes that she violated SCR 3.130–8.3(c) and therefore we agree with the Board, and Bar Counsel. As stated under Count VI, Respondent's actions in concealing her legal fees from the probate court was dishonest, fraudulent, and a serious misrepresentation.

## IV. ASSESSMENT OF PENALTY

■ As a result of the above alleged violations, the Trial Commission originally recommended a ninety-one day suspension, with sixty-one days probated for one year conditioned on the successful completion of EPEP. The Board recommends a public reprimand and successful completion of EPEP. Bar Counsel seeks a ninety-one day suspension, with thirty days probated for one year conditioned on the successful completion of EPEP. Respondent argues that if her conduct supports a disciplinary sanction, the sanction should be a private reprimand.

Upon consideration of the conduct and violations involved in this case, we agree with the Trial Commissioner that a ninety-one day suspension with sixty-one days probated for one year conditioned on the completion of EPEP is the appropriate sanction.

ACCORDINGLY, IT IS HEREBY ORDERED that:

(1) Respondent, Maria A. Fernandez, is found guilty of violating SCR 3.130–1.2; SCR 3.130–1.5(a); SCR 3.130–1.8(f); SCR 3.130–3.3(a)(22) and SCR 3.130–8.3(c);

(2) For these violations, Respondent is hereby suspended from the practice of law for ninety-one days, with sixty-one days probated for one year pending her completion of the KBA Ethics and Professionalism Enhancement Program (EPEP) within one year of the date of this Order;

(3) Respondent will not apply for Continuing Legal Education credit of any kind for her attendance at EPEP. She will furnish a release and waiver to the Office of Bar Counsel to review her records with the CLE Department that might otherwise be confidential, such release is to continue in effect until after she completes her remedial education in order to allow the Office of Bar Counsel to verify that she has not reported any hours to the CLE Commission that are to be taken as remedial education.

(4) In accordance with SCR 3.450, Respondent shall pay costs associated with these proceedings in the amount of $3,891.12, for which execution may issue from this Court upon finality of this Order.

MINTON, C.J., CUNNINGHAM, KELLER, NOBLE, SCOTT and VENTERS, JJ., concur. ABRAMSON, J., not sitting.

ENTERED: April 25, 2013.

/s/ John D. Minton, Jr.